By the Court. Slossoh, J.
The two material questions in this case, are:
1 Whether the plaintiff is a Iona fide holder, for value, of the bill in question.
2 Whether, if he be such a holder for value, he has not, by executing the inspection deed of April 7th, 1848, released the defendant from his liability as drawer of the bill.
First. The referee has found that the bill was drawn by the defendant, for the accommodation of Lawrence Phillips & Sons, (the acceptors) without any consideration having passed from the latter to the former. The evidence shows that Lawrence Phillips & Sons, delivered the bill to Sargeant, Cordon & Co., to get discounted for them; who, instead of doing this, delivered it to Lysaght, Smithett & Co., to be discounted, and the proceeds to be paid to them, and that this latter firm, instead of procuring the bill to be discounted, transferred it to the' plaintiff as security for' a debt of their own.
The question then is, what was the consideration which the plaintiff paid or gave for the bill ?
*113 The bill being confessedly a mere accommodation bill, as respects the defendant, the drawer, and no value having been given therefor by any of the intermediate parties, its validity as an obligation, on the part of the defendant, depends on the question whether the plaintiff received it for value, and without notice of its previous misapplication; and the burden of showing value is on him. It is not disputed that he received it before maturity. As it was an accommodation bill, without restriction as to the manner in' which it was to be used by Lawrence Phillips & Sons, had they transferred it to the plaintiff even as security for an antecedent debt, the defendant could not have objected the want of value in his hands. (Grandin v. Le Roy, 2d Paige, 509; Lathrop v. Morris, 5 Sandf. 7.)
But it was actually diverted from the purpose for which it was made by those to whom Lawrence Phillips & Sons, for whose accommodation it was made, delivered it; and that firm never received any benefit from it. In such a case, the taking of the paper as security for a pre-existing debt, is not such a parting with value, by the transferee, as to make it available in his hands against the accommodation party to the bill. (Stalker v. McDonald, 6 Hill, 93.)
The defendant contends that it is evident, both from the testimony of Lysaght, the plaintiff, and the letter of Lysaght, Smithett & Co., to him, of November 6th, 1847, that the plaintiff received the bill as a security for an advance previously made by him to that firm. The language both of the witness and the letter is ambiguous, and is certainly easily susceptible of the interpretation put upon it by the defendant’s counsel. They both speak of the plaintiff’s having advanced the £6,000 of stock as security, for the replacing of which the acceptance was deposited.
The referee has found that the bill was transferred for a good and valuable consideration, which, under the circumstances and law of the case, can only mean a consideration at the time of the transfer, and the question is, whether this finding is against the evidence. The letter, taking all its expressions together, is certainly not inconsistent with this finding, however susceptible it may be of the opposite interpretation. It authorizes the plaintiff to dispose of the securities of which this draft was one, on the failure of Lysaght, Smithett & Co., who deposited them, to replace in the *114 plaintiff’s name the same amount of stock in the course of the then present month, language which would naturally imply a loan of the stock, made at the time the securities were deposited. The language used by the plaintiff, in his testimony, is susceptible of the like interpretation. At all events, the finding of the referee is not so clearly against the evidence as to warrant us in disturbing it on this account.
Second. Does the inspection deed of April '7th, 1848, operate to discharge the liability of the defendant, as drawer of the bill in question. It is executed by Lawrence Phillips & Sons, the acceptors of the bill, of the first part, the inspectors, of the second part, and the creditors of that firm, of the third part, among whom is the plaintiff in this action, who appears to be a creditor in respect to this bill only.
It provides, among other things, that unless and until a fiat in bankruptcy shall be issued against the parties of the first part, or unless and until the inspectors should certify to a wilful default on the part of said parties of the first part, in the performance of some material covenant therein contained, &c., the creditors will not commence or prosecute any action, or suit at law or in equity, against them or either of them, or make any seizure or attachment, &c.; and that, in case any creditor should commence or prosecute such action or other proceeding, then the instrument was to operate, and might be pleaded, as a full and general release of all and every the debts, claims and demands of such creditor. The deed then provides, that, upon the inspectors’ certifying that the parties of the first part ought to be released from their partnership debts, either simply and absolutely, or upon their complying with certain conditions therein specified, then, upon their compliance with such conditions, if prescribed, or immediately upon the signature of such certificate, the deed was to operate and enure, and might be pleaded as a full and general release and discharge, by creditors signing it, from all actions, debts, claims and demands whatsoever, both at law and in equity, which such creditors had or might have, by reason of their several claims, or of any other matter, cause or thing whatsoever, in respect of said debts and liabilities, or any of them; and then follows a promise and agreement, between all the parties, that nothing therein contained should extend, or be construed to extend, to prevent the creditors “from suing or *115 prosecuting any person or persons, other than the parties of the first part,” “who is or are, or shall or maybe, liable or accountable to pay, or make good to them, all or any part of their respective debts, either as drawees, endorsers, or acceptors of any bill of exchange, promissory note, &c., &c., or as being liable or "accountable for the payment of any such debt or debts, without having subscribed any bill, note, or other instrument whatsoever, or otherwise, as if those presents had never been made." The deed contains, furthermore, a recital, that the creditors “signed the agreement, under the express reservation of all the securities they held."
If the legal operation of this release, or covenant not to sue, whichever its construction, be to deprive the drawer (the defendant) of his resort to the principal debtor, (the acceptors of the bill,) then, unquestionably, he is discharged. No principle is better settled. But if the effect of the promise, by which the plaintiff reserves his right of action against the drawees of the. bill, be to continue the liabilityof the acceptors to the drawees, in case the latter aré sued, then the covenant constitutes no defence to this action; and upon this question my mind is very clear. Lawrence Phillips & Sons, the acceptors, are parties to this deed. The reservation of the rights of the plaintiffs, against the drawer of the bill, is, therefore, with their assent. Such a reservation would be ineffectual, unless the drawer, in case he is sued, might resort to the acceptors for indemnity. The relative position of the drawer and acceptors, as principal debtor and surety, is not changed by the agreement between the creditor and acceptors; and the drawer can only be sued as a party standing in the position of surety for the latter. When, therefore, the acceptor accepts a release from the creditor, with a reservation of the latter’s right to sue the drawer, he, in effect, assents to remain bound to the drawer, in the contingency of such a suit being'brought against the latter. Any other construction would render the proviso unmeaning. The covenant not to sue, must be limited to the acts of the creditor, and the proviso must be construed as limiting the discharge of the acceptors by the rights of the drawer, who, by agreement of the acceptors, is thus still to remain liable.
The test of the question is, whether the acceptors could set up this deed, in bar of an action against them by the defendant, in the present suit ? If they could, the defendant in this action is *116 discharged; that they could not, is very clear, if the intention of the parties is to be regarded, in the construction of the instrument. The courts, in construing instruments of this kind, have adhered to this intention, when manifest, and not in conflict with some fixed and inflexible rule or policy of the law, as the standard, or test, by which it is to be interpreted—adopting the equity rule, which will not permit even an absolute release to operate, beyond the clear intention of the parties.
An unqualified release, or covenant not to sue the acceptor, would undoubtedly release the drawer; but a release of the acceptor, except from such liability as he may be under to the drawer, or, which is the same thing, with a reservation of the creditor’s rights against the drawer, is a qualified covenant or release only, and limited to the acts of the creditor himself, and is, consequently, no defence, as against an action on the part of the drawer.
The construction of these inspection or composition deeds, in their effect upon the rights of sureties, has undergone ranch discussion in England, where they appear to have become a favorite, as they certainly seem to be, a very wise and beneficent mode of administering the estates of insolvents; but the result has been, clearly to establish their validity as operative covenants not to sue the principal debtor, while, at the same time, the rights of the creditor against the surety, and of the surety against the principal, are, by virtue of the reservation contained in the deed, fully preserved. A very recent case, in the Queen’s Bench, Price et al. v. Barker et al. (30 L. Eq. R. 157,) has definitely settled the question, in that country, at least, for the present; and, on a similar deed to the one in question in the present action, the court held, as the result of the authorities, “ that a covenant not to sue, qualified by a reserve of the remedies against the sureties, is to allow the surety to retain all his remedies' over against the principal debtor; and that the covenant, not to sue, is to operate only so far as the rights of the surety may not be affected.”
On this whole subject, see also 1 Parsons’ Contr. 236; Kirby v. Taylor, 6 J. C. R. 242; Stewart v. Eden, 2 Caines, 121; Owen v. Hernan, 13 Beav. 196; Solly v. Forbes, 2 Brod. & Bing. 38; Clayell Salmon, 5 Gill & John. 314, where the general doctrine is fully sustained.
A case in our own court, Mottram v. Mills, (2 Sandford, 189,) is *117 relied upon by the defendant, as establishing a different doctrine, and as holding, that a promise like the one in question in a composition deed of like nature, does not operate as a reservation of the rights of the creditor against the sureties, nor, consequently, of the rights of the latter against the principal debtor released. That case appears to have been decided upon a point, which the facts, in the present action, do not present. The acceptors of the bills, in that case, had, at the time of their failure, in their possession, large consignments from the drawer, against which the bills had been drawn, and also bills of lading of other goods, then on the way, consigned to them in the same manner, and in respect to which it does not appear they had, as yet, made any acceptances; and they had also actually received some £11,000 of the proceeds of previous consignments, in excess of what they had paid of the defendant’s bills, and which was a clear debt from them to him. And the case showed, that, on applying all they had thus received, and were yet to receive, under the bills of lading then in their possession, and charging the defendant with all the payments which the acceptors had already made for him, and with the amount of the outstanding bills, (£22,000,) there would still be a balance in his favor. By the terms of the agreement, the acceptors were to transfer to the trustees, who were parties to the instrument, all the goods thus consigned to them by the drawer, and the bills of lading then in their possession, with a certain surplus in the hands of another house, belonging also to the drawer; all which were to be applied in extinguishment of the bills, and this constituted the consideration to the creditors (the plaintiffs) of the release, or covenant not to sue the acceptors. In other words, the consideration consisted in a transfer, to the trustees, of the drawer’s own properly, as a fund with which to take up the bills; and the court seem to have considered this as decisive, in the construction of the instrument. “There was no reservation,” say the court, “of the rights of the holders of the bills against other parties, as is attempted in the composition deed. It was an agreement, upon a valuable and sufficient consideration, and was fully performed, on the part of Major & Wallace, (the acceptors.) The plaintiffs were, therefore, obligated, according to its terms, never to sue, &e. There would have been more difficulty in sustaining the defence, if it rested wholly upon the stipulations in the compromise deed, but we are *118 spared the necessity of deciding the point. On the other ground, the defendant is entitled to judgment." .
We do not consider this case as at all decisive upon the effect of a reservation in a deed like the one at bar; but regard it as a case decided on in its own peculiar circumstances, and as leaving entirely open the question of the construction of a proviso in a composition deed, given under other and different circumstances.
We have not adverted to the point made, that notice of the protest for non-payment was not in time, as we consider the contrary too clear for argument.
The judgment on the report of the referee is affirmed with costs.