WILLIAM L. WHITTEMORE, as Administrator, etc., Appellant, *v.* THE JUDD LINSEED AND SPERM OIL COMPANY et al., Respondents.

Where a release of one of two joint debtors contains an express provision that it shall not affect or impair the claim of the creditor against the other debtor, the latter is not discharged.

An undivided part of a demand may be sold and transferred, and if all the owners of the demand unite in a suit upon it the fact of the assignment constitutes no defense.

Defendant, the J. L. & S. Oil Co., brought an action upon an alleged joint claim against T. & H.  T. alone defended, denying any liability on his part.  The action was determined in favor of the plaintiff therein; one roll was filed, but separate judgments were entered against the defendants for different amounts, the one against T. being the greater by the amount of the costs and interest.  In an action to restrain the collection of the judgment against H., *held*, that the judgments could not be considered as joint; and that a release of T. did not, in the absence of any claim of payment by either debtor, affect the right of the judgment creditors as against H.

Also *held*, that the judgment against T. could be separately assigned without affecting the rights of the creditor as against H.

(Argued March 12, 1891; decided April 14, 1891.)

APPEAL from judgment of the General Term of the Court of Common Pleas of the city of New York, entered upon an order made June 2, 1890, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term.

This action was brought to restrain the collection of a judgment recovered against Henry W. Hubbell by the Judd Linseed and Sperm Oil Company, and to have it adjudged that such judgment, so far as it was a claim or demand against Hubbell, was satisfied and discharged.

Hubbell died pending the litigation, and the action was continued by his administrator.

It appeared that Hubbell and one Robert L. Taylor, who had been engaged in various joint enterprises, became insolvent in 1867, and made a joint assignment of their joint estate

and separate assignments of their individual estates to assignees for the benefit of creditors.

The oil company had a claim against them upon which Taylor denied any liability, and after making an agreement with the assignees to compromise said claim, so far as Taylor was concerned, for fifty cents on the dollar in case it established Taylor's liability therefor, brought an action thereon against both parties.

Taylor alone defended and the action against him was tried and resulted in favor of the oil company, whereupon judgment was entered. But one roll was filed. The final statement in the judgment was dual in form and a separate judgment was entered against Hubbell for $40,950.29, and against Taylor for $43,420.70. The difference in amount represented the difference in costs and interest.

On August 15, 1872, the oil company assigned to the defendant Lord all their claims and demands against Robert L. Taylor individually and especially all its right, title and interest in and to a certain judgment for $43,420.70 and all its right, title and interest in and to money due and to grow due under the same from said Robert L. Taylor or his individual estate.

Said assignment further provided as follows : " It is expressly understood that said Judd Linseed and Sperm Oil Company are to retain and do expressly retain all their claims and rights of every nature against the joint property and estate of said Robert L. Taylor and Henry W. Hubbell, and against the individual property and estate of said Henry W. Hubbell. It being intended hereby to transfer only such claims as they have against the said Robert L. Taylor individually and his individual estate in whatever way the same may be made available for the payment thereof."

Negotiations followed for the settlement of the several estates the object being to release and discharge the assignees and to transfer to Hubbell certain property and claims, particularly a claim against the United States growing out of the destruction of a ship by the confederate cruiser Alabama, which it was claimed by him had not passed to the assignees.

To accomplish this Hubbell professed to have procured and to be able to procure releases of the assignees from all the creditors and consents to their discharge, except from four, among whom was the oil company.  A tripartite agreement was entered into between the surviving assignees and Taylor and Hubbell, which recited these facts, and the fact that the oil company's claim was to remain outstanding.

In these negotiations Mr. Lord represented Taylor, the assignees and certain creditors.  Hubbell was represented by Mr. Peet.

On August 8, 1874, there were delivered by Mr. Peet two releases ; one dated September 30, 1873, which was an agreement between certain creditors and Hubbell and which released and discharged the assignees from all claims and demands and right of accounting, and provided that nothing therein contained should impair or affect the claims of said creditors against Hubbell individually or prejudice their rights against him personally or any estate of his not then in the hands of the assignees.

The second release was dated January 5, 1874, and was an agreement with Hubbell of a like character and released Taylor from all claims and demands against him, and the assignees from all claims and demands and right of accounting against them, and contained a similar reservation of the releasors' claims against Hubbell individually and against any estate of his not in the hands of the assignees.

The oil company was a party to each of the foregoing instruments.  The defendant Lord also executed and delivered to Hubbell a release under seal from all claims against him or his individual estate upon certain demands of which Lord claimed to be the owner, among which the demand of the oil company was specified as one.  Some question appears to have arisen between Hubbell and Lord as to Lord's authority to execute this release under the assignment of August 15, 1872, and thereafter Hubbell procured from the oil company a further assignment dated October 6, 1874, whereby said company assigned to Lord " all their claims against the joint property and estate of Robert L. Taylor and Henry W. Hubbell in the

hands of their assignees under the assignment dated October 26, 1867, under and by virtue of a judgment against said Taylor and Hubbell in the Court of Common Pleas, etc., for $43,420.70 granting to Lord power and authority to ask and demand the same from the assignees and from any person or persons excepting as against Hubbell or any individual estate or joint estate hereafter realized by him."

On April 1, 1876, the oil compar y issued an execution upon said judgment with directions to the sheriff to satisfy the same out of Hubbell's property and claiming $25,060.25 and interest to be due thereon.

*Wm. C. De Witt* and *Edwin B. Smith* for appellant. The debt being joint, and all the proceedings thereupon having been based on a joint liability, the judgment must be deemed to be joint, irrespective of its final and dual statement. (Freem. on Judgts. § 38; *Fish* v. *Emerson,* 44 N. Y. 378; *Tompkins* v. *Sands,* 8 Wend. 466; *Hall* v. *Marks,* 34 Ill. 363; *Matthews* v. *Houghton,* 11 Me. 377; *Morrill* v. *Foster,* 33 N. H. 384, 385; *Lawrence Case,* 18 Abb. Pr. 347; *Townsend* v. *Wesson,* 4 Duer, 363, 354; *Forsyth* v. *Campbell,* 15 Hun, 237, 238; *McGuire* v. *Kouns,* 7 B. Mon. 386; *Adams* v. *Olive,* 62 Ala. 420; *Mason* v. *Wolff,* 40 Cal. 249; *Harper* v. *Rowe,* 53 id. 234; *Carrick* v. *Armstrong,* 2 Cold. 265; *Gest* v. *R. R. Co.,* 30 La. Ann. 28; *Cambell* v. *Rankin,* 99 U. S. 263; *Cromwell* v. *Sac Co.,* 94 id. 351; *Young* v. *Black,* 7 Cr. 565; *Wood* v. *Jackson,* 8 Wend. 44, 45; 24 How. [U. S.] 344; *Elwell* v. *McQueen,* 10 Wend. 520; *F. N. Bank* v. *Neyhardt,* 13 Blatchf. 394; *Goddard* v. *Coffin,* 2 Ware, 385; *Whitney* v. *Townsend,* 67 N. Y. 43; *Boyd* v. *Zacherie,* 6 Pet. 641; *Foster* v. *Wood,* 1 Abb. [N. S.] 150; *Ticknor* v. *Kennedy,* 4 id. 419; *Gilliam* v. *Spratt,* 8 id. 15; *Blum* v. *Hartman,* 3 Daly, 48; *McCouns* v. *Holmes,* 4 Litt. 389; *Conrad* v. *Ciffey,* 11 How. [U. S.] 492; *Finnegan* v. *Manchester,* 12 Ia. 521; *Wilson* v. *Nance,* 11 Hump. 191; *Little* v. *Birdwell,* 27 Tex. 688; *Hall* v. *Dana,* 2 Aiken, 381; *Lamar* v. *Williams,* 39 Miss. 342; *Ecker* v. *Bank,* 64 Md. 293; *Campbell* v. *Wolf,* 33 Mo. 459; *Beers* v.

*Shannon,* 73 N. Y. 297.)   The judgment entered in the suit on the claim or debt was a joint judgment against Hubbell and Taylor, although each was held to be liable to have execution issued for a different sum by reason of different costs.   (*Moot* v. *Petrie,* 13 Wend. 317; *McCoon* v. *Biggs,* 2 Hill, 121; *Robertson* v. *Smith,* 18 Johns. 459, 471; *Olmstead* v. *Webster,* 8 N. Y. 413.)   What the law makes joint is not divisible by assignment either in itself or in its lien.   (*Bronson* v. *Fitzburgh,* 1 Hill, 185 ; *Bank of Poughkeepsie* v. *Ibbotson,* 5 Hill, 461; *Hoffman* v. *Dunlap,* 1 Barb. 185 ; *Oakley* v. *Aspinwall,* 1 Duer. 18; *DeLong* v. *Curtis,* 35 Hun, 94 ; *Brown* v. *Williams,* 4 Wend. 366, 367; *Mitchell* v. *Allen,* 25 Hun. 543 ; *Lovejoy* v. *Murray,* 3 Wall. 1; *Irvine* v. *Milbank,* 15 Abb. [N. S.] 378; 56 N. Y. 635; *Knickerbocker* v. *Cohen,* 8 Cow. 111; *Gunther* v. *Lee,* 45 Md. 50 ; *Ruble* v. *Turner,* 2 H. & M. 38; 7 Johns. 207 ; *Olmstead* v. *Webster,* 8 N. Y. 413 ; *Robeson* v. *Smith,* 18 Johns. 459.)   The release here being under seal was a technical one and cannot be construed as a mere covenant not to sue.   (*Irvine* v. *Milbank,* 15 Abb. [N. S.] 378 ; 56 N. Y. 635 ; *Brown* v. *Fitzburgh,* 1 Hill, 185 ; *Rowley* v. *Stoddard,* 7 Johns. 207 ; *C. Bank* v. *Messinger,* 9 Cow. 37 ; *Hoffman* v. *Dunlap,* 1 Barb. 185 ; *Cornell* v. *Martin,* 35 id. 157 ; *Parsons* v. *Hughes,* 9 Paige, 591 ; *Robertson* v. *Smith,* 18 Johns. 459 ; *Olmstead* v. *Webster,* 8 N. Y. 413 ; *Stearn* v. *Tappen,* 5 Duer, 294 ; *Breslin* v. *Peck,* 38 Hun, 623.)   The debt, being joint, cannot be split up into different pieces and assigned so as to be held by different parties; nor can a debt be so assigned as to charge part of the debt upon one part of debtor's property, and another part upon another part of his property, without the debtor's consent.   (Freeman on Judgts. § 424 ; 1 Black on Judgts. §§ 211, 257 ; Id. §§ 944, 1125 ; *Farrington* v. *Payne,* 15 Johns. 432 ; *Smith* v. *Jones,* Id. 229 ; *Miller* v. *Covert,* 1 Wend. 487; *Calvin* v. *Corwin,* 15 id. 557 ; *Coster* v. *N. Y. & E. R. R. Co.,* 6 Duer, 43–46 ; *Faulk* v. *Kellum,* 54 Ill. 191; *Burnett* v. *Crandall,* 4 Cent. L. J. 230 ; *Love* v. *Fairfield,* 13 Mo. 300 ; *Shankland* v. *Mayor, etc.,* 5 Pet. 394.) Whatever right Mr. Lord may have obtained under the assign-

ment of August 15, 1872, certainly by the assignment of October sixth, of the judgment against Hubbell and Taylor, he became a creditor of a joint debt, and by the terms of the assignment he was obliged to collect the debt out of joint assets of Hubbell and Taylor and not out of the individual assets of Hubbell. (Laws of 1838, chap. 257; Laws of 1841, chap. 848; *Bank of Poughkeepsie* v. *Ibbotson,* 5 Hill, 461; *Hoffman* v. *Dunlap,* 1 Barb. 185; *Faulkner* v. *Suydam,* 7 Robt. 614.) Mr. Lord represented himself in writing to be the owner and holder of the claim of the Judd Oil Company against Robert L. Taylor and Henry W. Hubbell, and for a good and sufficient consideration, under seal, he gave a release from it to Hubbell. And it follows that unless the representation was true and Mr. Lord had the right to discharge Hubbell, he is in equity liable to be required to protect Mr. Hubbell to whatever amount he is called upon to pay on the judgment, at least to the amount which Mr. Lord received or could have received. (Story's Eq. Jur. § 1250; *Riddle* v. *Mandville,* 5 Cranch. 322, 329, 330; *Russell* v. *Clarke,* 7 id. 97; *Williams* v. *Russell,* 19 Pick. 165; *McCall* v. *Harrison,* 1 Black. 126, 130; *Derham* v. *Lee,* 87 N. Y. 599, 603, 604; *Jones* v. *Grant,* 10 Paige, 348, 350; *Kay* v. *Whittaker,* 44 id. 576, 577; *McHenry* v. *Hazard,* 45 id. 588; *Neale* v. *Neales,* 9 Wall. 1; *Oelrichs* v. *Spain,* 15 id. 228; *Foote* v. *Linck,* 5 McL. 616; *Wright* v. *Hooker,* 10 N. Y. 51; *Marie* v. *Garrison,* 13 Abb. [N. C.] 210, 317, 321; *James* v. *Cowing,* 25 Wkly. Dig. 97; 2 Story's Eq. Jur. §§ 73, 790–793, 1213, 1250; *Reese* v. *Kirk,* 29 Ala. 406; *Ord* v. *McKee,* 5 Cal. 515; *Hunter* v. *McCoy,* 14 Ind. 528; *Graham* v. *R. R. Co.,* 3 Wall. 711; *Boone* v. *Chiles,* 10 Pet. 230; Code Civ. Pro. § 1204; *Smyth* v. *Monroe,* 84 N. Y. 354; *Drury* v. *Fay,* 14 Pick. 326.) When this suit was brought it was believed by the plaintiff, as the Common Pleas General Term believed, that Mr. Lord would not have given the release of August eighth unless he had some authority, either by parol assignment or as agent. And when he testified on the trial that such was not a fact, the amendment was asked for that, if the

release for which he had received large consideration failed, he should be called upon to fulfill it and protect his releasee from the judgment. We submit that this was not an inconsistent remedy, nor did it introduce a new cause of action for damages for fraud or deceit, nor was it a legal and not an equitable claim. (*Graffam* v. *Burgess*, 117 U. S. 181, 195.)

*Joseph H. Choate* for respondent, the Judd Linseed and Sperm Oil Company. The holding on the former trial as to the nature of the original judgment as it stands recorded, having been approved by the General Term and by the Court of Appeals, there was no course for the court upon this trial but to dismiss the complaint. Upon this appeal this court will necessarily follow these former rulings. (*Booth* v. *F. & M. N. Bank*, 74 N. Y. 228.) The assignment of the 15th of August, 1872, did not bar or defeat, or authorize the defendant Lord to release the claim of the defendant the Judd Oil Company against Hubbell. (1 Pars. on Cont. [5th ed.] 29 ; *Solly* v. *Forbes*, 2 B. & B. 38 ; *North* v. *Wakefield*, 13 Ad. & El. 536 ; *Thompson* v. *Lack*, 3 C. B. 540 ; *Price* v. *Barker*, 30 Eng. Law & Eq. 157 ; *Harrison* v. *Close*, 2 Johns. 449 ; *Rowley* v. *Stoddard*, 7 id. 107 ; *Coulter* v. *Richmond*, 59 N. Y. 478 ; *Matthews* v. *C. M. Co.*, 3 Robt. 711 ; *Burke* v. *Noble*, 48 Penn. St. 168 ; *Yates* v. *Donaldson*, 5 Md. 380 ; *Bonney* v. *Bonney*, 29 Iowa, 448 ; *Aylesworth* v. *Brown*, 31 Ind. 270 ; *Claggit* v. *Salmon*, 5 Gill & Johns. 354 ; *Harbeck* v. *Vanderbilt*, 20 N. Y. 395 ; *Couch* v. *Mills*, 21 Wend. 424 ; *Hosack* v. *Rogers*, 8 Paige, 229 ; *Miller* v. *Fenton*, 11 id. 18 ; *Harbeck* v. *Pupin*, 55 Hun, 335, 339 ; 123 N. Y. 115 ; *Green* v. *Wynn*, L. R. [4 Ch. Div.] 204 ; 2 Addison on Cont. 1222, 1223 ; Bishop on Cont. [2d ed.] § 873. If, the release executed by Mr. Lord was not effective at the time of its delivery in August, 1874, it would not become effective by any subsequently executed assignment to him. (*Quarles* v. *Quarles*, 4 Mass. 688 ; *Comstock* v. *Smith*, 13 Pick. 116.) But, even if the assignment of October, 1874, had been

executed before the delivery of the release to Hubbell, the release would have been wholly ineffectual, for the reason that the assignment of October conferred no right on Mr. Lord to release Hubbell. Where, as here, the decision and judgment are substantially and satisfactorily sustained by evidence not objected to, this court will affirm the judgment, independently of any question arising upon the rejection or admission of evidence. (*Forrest* v. *Forrest*, 25 N. Y. 510 ; *In re N. Y. C. & H. R. R. R. Co.*, 90 id. 347; *McGean* v. *M. R. Co.*, 117 id. 219, 224.)

*S. P. Nash* for respondent Lord. Plaintiff should be held to the election which he made to maintain his claim as one based upon an alleged full discharge and satisfaction of the judgment of the Judd Company. (*Fowler* v. *B. S. Bank*, 113 N. Y. 450 ; *Conrow* v. *Little*, 115 id. 387, 393, 394 ; *Terry* v. *Munger*, 121 id. 161.) As Lord had, in fact only a restricted and partial ownership, if Hubbell, or his counsel, Peet, knew this, such knowledge precludes any claim as for a breach of warranty or implied covenant of indemnity. (*Bennett* v. *Buchan*, 76 N. Y. 386.) That the paper of August 8, 1874, was under seal, does not preclude the interpretation of it according to its true meaning, as disclosed by the circumstances of its execution, nor the holding that, under any other interpretation, it would be void for want of consideration. (*Vanderbilt* v. *Schreyer*, 91 N. Y. 392.) The decision of the court that the relief asked for in the proposed amendment was inconsistent with the cause of action was correct. (*Southwick* v. *F. N. Bank*, 84 N. Y. 420, 428, 429 ; *Avery* v. *N. Y. C. & H. R. R. R. Co.*, 106 N. Y. 142, 151.)

*D. D. Lord* for respondent Lord. If errors have been made in the rulings and decision the judgment should stand, because the testimony shows that the plaintiff has no merits, legal or equitable, and a new trial would be of no benefit to him. (Graham on New Trials, 301.)

BROWN, J.    The appellant claims that Hubbell's discharge from the judgment was accomplished in two ways.

First. By the release executed by the defendant Lord and delivered to him on August 8, 1874.

Second. By the release of Taylor by the oil company by the instrument of January 5, 1874.

The first ground is the one upon which relief was based in the complaint. The second is not there mentioned or made the basis of the judgment asked for.

While I have grave doubt whether the second claim is available to the appellant under his complaint or whether the question was raised at the trial by any proper and sufficient request to the court thereon ; as the facts upon which the claim is now made appear in the findings of the court the point is considered as if it was properly before us.

The second ground upon which the discharge is claimed will be considered first.

The strict common-law rule is that if two persons be bound jointly and severally in an obligation, and the obligee voluntarily and unconditionally releases one of them, both are discharged and either may plead the release in bar.

But the legal operation of a release of one of two or more joint debtors may be restrained by an express provision in the instrument that it shall not operate as to the other.

This question was recently considered in this court in the case of *Hood* v. *Hayward* (35 N. Y. State Rep. 229, 237 ; 124 N. Y. 1).

In that case one surety upon a non-resident executor's bond, was released and discharged by the devisees and legatees under the will and the appellant's contention was that by virtue of that release to his co-surety he also was released.

That contention was overruled and it was held that he was not discharged, and the decision rested upon an express provision in the release that it should not be construed as in any way affecting any claim or demand which the releasors had or might have against the non-resident executor or against the appellant as surety on his bond.

In addition to the authorities cited by Judge Potter in support of that opinion I refer to the following: (1 Parsons on Contracts [5th ed.] p. 29; *Kirby* v. *Taylor*, 6 John. Ch. 246; *S. C.*, Hopkins' Rep. 309–334; *Rogers* v. *Hosack*, 18 Wend. 319; 25 id. 313; see opinion of COWEN, J.; *Solly* v. *Forbes*, 2 Brod. & B. 38; *North* v *Wakefield*, 13 Ad. & El. 536; *Burke* v. *Noble*, 48 Penn. St. 168; *Yates* v. *Donaldson*, 5 Md. 389; *Edwards* v. *Varick*, 5 Denio. 665–699; *Lysaght* v. *Phillips*, 5 Duer, 106–116).

The rule deducible from all the authorities is that equity always gives to a release operation according to the intention of the parties and the justice of the case, and although many early cases may be cited to the effect that the rule applied by courts of law was otherwise, and that a saving clause repug-nant to the nature of the grant was void and that the grant remained absolute and unqualified, such is not the modern rule of construction.

The equitable rule now prevails and a release is to be construed according to the intent of the parties and the object and purpose of the instrument, and that intent will control and limit its operation.

Testing the releases in this case by the clear and manifest intention of the parties and the occasion of giving it its opera-tion will be confined to Taylor and it in no way tended to release or discharge Hubbell.

By the terms of the contract, Hubbell was to remain liable, and under all the authorities the release of Taylor operated to discharge him alone.

But the two papers appear to have been delivered by Hubbell's attorney on August 8, 1874, and for the purpose of this appeal, we must assume their delivery to have been Hubbell's act.

The purpose of their execution and delivery is shown by the tripartite agreement executed by and between the surviving assignees and Taylor and Hubbell.

This agreement looked to the settlement of the several estates and the discharge of the assignees, and to accomplish

that object Hubbell professed to have procured, or to be able to procure, releases to said assignees from all outstanding creditors of the joint estate and from his individual estate, except four, one of whom was the oil company, and it was therein expressly stated that the four excepted claims were to remain outstanding. Such agreement between them provided that a certain claim against the United States, arising out of the destruction of a ship by the Confederate cruiser Alabama, was not a part of the joint estate assigned, but belonged to Taylor and Hubbell individually, and other claims, with the consent of Taylor, were to be assigned to Hubbell to enable him to procure releases from creditors of the joint estate.

Pursuant to this agreement, the two releases in question were delivered by Hubbell, and he must be held to be bound by the express stipulation that the oil company's claim was to remain outstanding against him, and that so far as the release to Taylor was concerned, it expressly limited its operation to Taylor, and was intended to discharge him alone.

In other words, he must be deemed to have consented to the latter provision.

In *Rogers* v. *Hosack* (18 Wend. 336), Judge COWEN said, in speaking of the rule that the release of one of two joint debtors operates to discharge both: "The rule has generally, if not universally, been applied to cases where such co-debtors were released without the consent of the other. * * * The release is like the leaving off of the seal from a bond which subverts the whole contract. * * * But the case is different when the alteration is by the consent of all the parties, accompanied with an intention that those only should be discharged whose names or seals are torn off in the case supposed, or who are released as in the case at bar."

After discussing the facts of the case before him, he reaches the conclusion that the debtor, who claimed the benefit of the strict rule, intended to remain liable, and said: "Upon principle there is nothing to prevent such an agreement."

To the same effect is *Burson* v. *Kincaid* (3 Penn. 57).

Upon the assumption, therefore, that the judgment against Taylor and Hubbell was joint, our conclusion is that Hubbell was not discharged by the release of January, 1874.

But the conclusive fact in this connection is that no joint judgment ever was entered against Taylor and Hubbell. The whole of the appellant's argument is built upon the assumption that such a judgment existed, and his effort has been to convince us, that although the judgment was not joint in form, yet it must and should be so treated by the court on this appeal.

Having exhausted all the remedies possible in an ineffective effort to correct the judgment and make it joint, he asks this court to so regard it, for the purposes of enabling him to invoke the aid of a harsh and technical rule of law, to discharge him from an obligation towards the payment of which it does not appear that he has ever contributed a cent.

To do so would manifestly subvert and overthrow the intention of the parties in their various complicated dealings had in the settlement of the several estates. They had a right to contract upon the faith of the record as it stood, and it is not unreasonable to assume that if the judgment had been joint in form the result sought would have been reached in another way, and the case not embarrassed with the questions that have arisen upon the several assignments and releases that have been executed.

The fact that is prominent all through the negotiations is that the oil company never intended to release its claim against Hubbell, and Hubbell was well aware of that fact.

The other ground for the judgment sought rests wholly upon the question whether Mr. Lord had authority to execute and deliver the release given to Hubbell.

The trial court found that such instrument was executed without any power or authority, and as to the oil company's claim was wholly inoperative and void.

It may be conceded that the assignment of October 6, 1874, was intended to relate back to and have effect as of a date prior to the execution of the release.

By the terms of the instrument of August, 1872, the oil company assigned only its claim against Taylor individually, and against his individual estate in the hands of the assignee.

By the instrument of October, 1874, it assigned its claim against the joint property of Taylor and Hubbell. In both, it expressly reserved its claim against Hubbell individually.

This was in entire harmony with the tripartite agreement which recited the fact that the assignees had never realized anything from Hubbell's individual estate and which contemplated the discharge of the assignees by the creditors, but that the oil company should retain its claim against Hubbell.

The legal conclusion which the appellant asked the court to draw from the two assignments was that they were ineffectual to divide the claim and carried to the assignee the right to collect the whole judgment.

That is, that although the assignor intended to sell and the assignee to buy but a part or share of the claim and clearly expressed such intent in the deed of assignment, the law gives to the instrument an entirely different effect and transfers what neither intended should pass by it.

I know of no principle of law that works such a result, and no authority is cited to sustain it.

The authorities that are cited hold simply that a creditor cannot split up a single cause of action without the consent of the debtor.

The reason for this rule is that to permit a cause of action to be divided would subject the debtor to many embarrassments and responsibilities not contemplated in his original contract. He has a right to stand upon the singleness of his original contract and to decline any assignment by which it may be broken into fragments. (*Mandeville* v. *Welch*, 5 Wheat. 277.)

But the rule goes only to the right to sue as assignee of a part of a single cause of action.

It does not deny the right to sell and transfer an undivided part of a demand. And if all the owners unite in a suit upon it, the fact of the assignment of a part constitutes no defense.

We need not consider in this case what title or authority Mr. Lord acquired under the assignment to him or what would have been the effect on the claim if Taylor or the assignee had paid it in full to Lord. No such question arises.

The only pertinent inquiry is did Lord under the assignment of the demand against Taylor acquire power to release Hubbell.

That inquiry was properly answered at the trial and there was no error in the refusal to find the request I have quoted.

If the assignment was ineffectual to divide the claim the title remained in the oil company.

But as the judgments were several and not joint, and no question of payment by either debtor arises, it is not perceived why the judgment against Taylor could not be separately assigned. No one was prejudiced by such a transaction, and the rights of the debtors between themselves remain unimpaired and unaffected.

The claim that Mr. Lord incurred some liability to Hubbell in case the release was ineffectual to discharge him is not available on this appeal. No motion was made to amend the complaint, except in respect to the demand for judgment. The claim against Lord could not stand upon the allegation of the complaint and the court properly denied the motion to amend.

The judgment should be affirmed.

All concur, except PARKER, J., not sitting.

Judgment affirmed.