FRED A. GAMBOLD, as Executor, etc., of CHARLES S. LAMPHEAR, Deceased, Plaintiff, *v.* GEORGE W. MACLEAN and Another, as Surviving Executors of and Trustees, etc., of KATHERINE L. MACLEAN, Deceased, Defendants.

Supreme Court, Kings County, April 3, 1926.

Trusts — express trust in real property — property held by two brothers and two sisters as tenants in common was derived from their grandfather — one brother, western miner, tried to raise money on his interest in estate — said brother's family objected to offer of $7,500 by strangers — brother finally made absolute assignment of his interest to his brother and sister for stated consideration of $2,000 — evidence and relationship of parties shows agreement to hold his interest in trust at four per cent for his life — action herein in equity for accounting on trust was properly brought — assignor's executor is entitled to accounting — ten-year Statute of Limitations is applicable — fact that assignor instituted action on entirely different theory does not bar present action — settlement by assignor with one of assignees does not bar present action against other assignee — Statute of Frauds not defense.

In an action to compel the executors of an alleged trustee of an express trust of real property to account, in which it appears that the plaintiff's testator and a brother and two sisters acquired certain real property as tenants in common through their grandfather, and that later plaintiff's testator made an absolute assignment of his interest therein to the defendants' testator and to a brother, the evidence establishes the existence of a trust in favor of plaintiff's testator, by the terms of which the plaintiff's testator was to receive four per cent for life on the value of his interest, since it appears that there was a very intimate relationship between the brothers and sisters; that the plaintiff's testator was a western miner engaged in the development of claims and in need of money in 1912; that he came East and endeavored to sell his interest in the property to strangers who offered him $7,500; that his family objected, and after a conference the absolute assignment was made by the plaintiff's testator to the defendant's testator and a brother for the stated sum of $2,000; and that the evidence in a prior action and certain correspondence show that it was the intention of the assignees and the assignor to create a trust in favor of plaintiff's testator in the balance of his interest in the property held in common for his benefit during life.

This action to have the existence of an express trust declared and for an accounting was properly brought in equity, and the ten-year Statute of Limitations is applicable. (Civ. Prac. Act, § 53.)

The fact that plaintiff's testator during his lifetime instituted an action on an entirely different theory from the present action, in which he was unsuccessful, does not bar the plaintiff's right to prosecute this action.

Misc. 820]                    Supreme Court, April, 1926.

A settlement made by the plaintiff's testator with one of the assignees, his brother, does not bar the present action against the representatives of the other assignee, for it was not the intention of the plaintiff's testator to release the other assignee, and furthermore, the assignees held the property under the assignment as tenants in common.

In view of the relationship of the parties, the defense of the Statute of Frauds is held not to be available.

ACTION in equity, brought by the plaintiff, as executor of Charles S. Lamphear, deceased, against George W. MacLean and another, as executors of Katherine L. MacLean, deceased, for an accounting by said executors, defendants herein, of the interest or income which may have been received by the said defendants up to four per cent of the value of the share of Charles S. Lamphear in the estate of his grandfather, John Healy, deceased.

*Herbert P. Queal* and *Eugene Lamb Richards*, for the plaintiff.

*Jay Noble Emley*, for the defendants.

DIKE, J. This is a new and, it is to be hoped, final phase of a long-drawn-out family litigation which has been prosecuted for years in our courts. The real property which is the subject of the present controversy has, in the meanwhile, by reason of its desirable locality, become greatly enhanced in value and in income-deriving power. Death has very greatly changed the personnel of those prosecuting and defending in this lengthy litigation. There were two brothers and two sisters interested, as grandchildren, in the subject-matter of this litigation, the estate of their grandfather, John Healy. Charles S. Lamphear died on the 1st day of February, 1922. The plaintiff herein and his wife, Jennie Gambold, were named in his will as executor and executrix. Jennie Gambold, however, renounced her appointment as executrix, and the plaintiff herein, Fred A. Gambold, duly qualified as executor and is now so acting and, in reality and actually, is the interested party in the outcome of this litigation. The four grandchildren of said John Healy, deceased, namely, Amos S. Lamphear, Ella L. F. Nicholson, Katherine L. MacLean and Charles S. Lamphear, were vested and seized, as tenants in common, of an undivided one-quarter share each in two parcels of property in the county of Kings. The activities and peculiar personal characteristics of Charles S. Lamphear, in his lifetime, are of interest, it seems to me, in this litigation. The evidence would clearly indicate his roving disposition, his disinclination to remain with the family in the East, and his enthusiasm for adventure which took him into the mining regions of the West. He was a miner. He was engaged in developing a claim for a number of years before his death. The evidence clearly shows the characteristic expectation of unbounded success

in his developments, the results, however, showing that such feelings were the triumph of hope over experience. To obtain funds on a previous occasion he at one time mortgaged his interest for $25,000. Such money proving inadequate, he again sought the East to secure, if possible, further advances upon his interest in his grandfather's estate. It was upon this visit to the East that he con-- ferred with the Realty Associates, with a view to raising the loan, and the sum of $7,500 was discussed. His family, or some of them, discouraged his " peddling " his interest in that way or in the public market, and conferences were held, so that, on the 17th day of September, 1912, Charles S. Lamphear executed and delivered to Amos S. Lamphear and Katherine L. MacLean a deed of assignment of all his right, title and interest in and to his one-quarter undivided interest in the estate of his grandfather, John Healy. This is the crux of the case. The plaintiff urges that the transfer under this document was in trust upon an agreement for the benefit of Charles S. Lamphear, made by said Amos S. Lamphear and Katherine L. MacLean to pay Charles S. Lamphear for said deed or assignment the sum of $2,000 in cash and in addition thereto to take care of him during his lifetime by creating for him a trust for his benefit to pay or secure to him the equivalent of at least four per cent per annum on the value of his said one-fourth share or interest, or the invested equivalent thereof. In any event, $2,000 was paid to Charles, who almost immediately left for the West, obviously to sink such sum in the vain pursuit of riches by way of his mine, and, upon such funds being exhausted, returned to the East in order to see what further sum or sums he might obtain. The real problem here is as indicated: Was this deed of assignment above mentioned, dated September 17, 1912, an absolute deed which eliminated Charles completely and finally from any interest in his grandfather's estate, or is there anything in the evidence herein which shows in fact that a trust, as claimed by the plaintiff, by that very document and the facts surrounding its execution, was established for plaintiff's testator, Charles? At the outset we have the question of the close and intimate relationship existing between brother and sisters, and, as is so frequently the case, we find that dealings between such relatives take on an informal character, and confidence in kin often disarms one from the customary caution characteristic of business deals. I cannot presume here that this brother and sister, dealing with Charles, were desirous of making money out of their rather eccentric brother, nor can I conclude that Charles, who was so keen on his mine to get the money to develop it, would permit his brother and sister to have his property at a price so greatly under

the bid of the Realty Associates, unless there was some thought in his mind of a subsequent advantage that might accrue to him. The absolute deed, I can readily understand, was a natural document, under the circumstances, made by Charles' brother and sister, to protect themselves in relation to the property, the care and development of which was under their direction or was their responsibility. We find the phrase " to trust to their honor," which would clearly imply something beyond the face of the document. From letters and from testimony in former actions and much of the atmosphere of the case before me, I find the persistent reiteration of the " four per cent " arrangement, or the suggestion in some form of an interest in this property and the income from it by Charles subsequent to his signing the so-called deed of September. It is perfectly true that upon its face this is an absolute unconditional transfer of Charles' interest to the grantees, as indicated. We find Amos corroborating this Exhibit 3 and again we find the recurring *four per cent* interest of Charles acknowledged, a brotherly gesture which, however, confirms the thought of subsequent acts by brother and sister for the benefit of Charles and their taking into consideration his interest up to four per cent in the income. Thus, in a letter from Amos to his sister we find: " I believe I can borrow $2,000 from the Peoples Trust Company to pay off Charlie, take over his interest in our name, and then Mr. Hodgskin says after he is done, we can write him a letter stating that we have purchased his interest without any comeback as value in full, but feel that after mother's death occurring we do not wish to take it entirely away from him; that after her death whatever is to be paid off and which he is liable for, shall be done, and the balance placed out for him through the Peoples Trust Company on a four per cent basis during the term of his life." Surely, these words give a character to the document unmistakable — this document that plaintiff claims indicates from the circumstances surrounding it a trust established for the benefit of Charles S. Lamphear and which the defendants claim is an absolute deed. This letter would indicate that Amos, who was the active manager of the property, was, with commendable brotherly care, providing, or at least planning, for his somewhat prodigal relative by this four per cent provision. (Exhibit 2.) The proposed but never executed deed of trust prepared by Hodgskin is confirmation most eloquent. It would seem to me clear that the ties of blood were eloquent to convince Charles that he should deal with his brother and sisters in relation to the property rather than with strangers. The confidence engendered by such a relationship may not be said to have been rashly imposed. This very element of relationship gives peculiar power and force to the conten-

Supreme Court, April, 1926. [Vol. 126

tion that there was a trust. A long line of cases uphold the duty of the court to study with care the particular circumstances where a close relationship of the parties is disclosed. One of the late cases is that of *Sinclair* v. *Purdy* (235 N. Y. 245), a case involving the relationship of brother and sister. The brother had promised to devise his interest in the property held with his sister to a niece with whom he lived, and, dying, it appeared that he had failed to make this provision. It is stated: " In this action brought to partition the property, the niece has set up a counterclaim asking judgment establishing a trust in favor of the brother to the extent of an undivided one-half of the property, and specific performance of his contract to devise his half to her." And Cardozo, J., in his opinion, later said: " We think the letter of February 20, 1903 [from the sister to the brother] was erroneously excluded. * * * No doubt the recognition of the trust must be found in the writing, and not elsewhere. The ordinary aids to interpretation, however, are not to be ignored; and probabilities of circumstance and occasion may point or clarify a meaning that might otherwise be doubtful (*Marks* v. *Cowdin*, 226 N. Y. 138). * * * We must read the letter in its setting. Thus viewed, its assertion of equality of interest becomes something more than a tribute to brotherly affection. It is the recognition of a right, and the declaration of a duty. * * * It is not the promise only, nor the breach only, but unjust enrichment under cover of the relation of confidence, which puts the court in motion." And an equally strong opinion we find as delivered by the chief judge in *Harrington* v. *Schiller* (231 N. Y. 278) and also *Wood* v. *Rabe* (96 id. 414), wherein Andrews, J., said: " There are two principles upon which a court of equity acts in exercising its remedial jurisdiction, which taken together in our opinion entitle the plaintiff to maintain this action. One is that it will not permit the Statute of Frauds to be used as an instrument of fraud, and the other, that when a person through the influence of a confidential relation acquires title to property, or obtains an advantage which he cannot conscientiously retain, the court, to prevent the abuse of confidence, will grant relief." I feel from the facts, therefore, and being guided by these authorities, that this confidential relation must have a dominating influence upon any construction of the document of September 17, 1912. It is urged by the defense that the action is barred by the six-year Statute of Limitations. There seems to be a distinction in cases where the so-called trustee has nothing to do but to give the property back, and such a case as the one at bar, where the trustees had to do certain definite things, had to deal with a certain part of the income from it where the question of value was not definitely determined. In any event,

it seems to me that the ten-year Statute of Limitations is applicable here and that section 53 of the Civil Practice Act would apply. The case of *Sheldon* v. *Sheldon* (133 N. Y. 1) lays this distinction between a case where the party receiving the money for property was bound to return it on request and a case where the property was to be held and invested for the benefit of the transferor is clearly set forth. (See, also, the cases of *Gilmore* v. *Ham*, 142 N. Y. 1, and *Treadwell* v. *Clark*, 190 id. 51, 59.) I, therefore, feel that from the facts in this case and the allegations of the complaint plaintiff is entitled to a finding of an express trust; that the action is properly brought in equity and that the ten-year rule applies. It is urged also that in a prior action which ended adversely to Charles in his lifetime, an utterly different theory from the one in the present case was presented and that, therefore, the present case upon an entirely different theory is without merit. I cannot view that argument as a serious objection to this present suit. It would, indeed, be a serious menace to plaintiffs. Must a litigant be bound by his first cause of action? If a plaintiff's counsel errs in the theory of a case, must that error forever foreclose the unlucky client from the relief to which a later and wiser consideration of the facts would entitle him? So long as the facts are not distorted and so long as they justify a new theory, based upon proper proof, I see no reason why the preceding actions and the adverse results therein should bar the present plaintiff from a right sustained by the facts as now presented. Amos S. Lamphear, by a settlement between himself and Charles, has been eliminated, but I do not feel that this settlement between plaintiff's testator and Amos is in any way a bar to the present action against the representatives of Katherine L. MacLean. As I consider the relationship of these parties from the evidence, the grantees under the document of September seventeenth would bear the relation one to the other of tenants in common. Sections 230 and 231 of the Debtor and Creditor Law would cover the situation in case of joint tenancy. In *Whittemore* v. *Judd Linseed, etc., Co.* (124 N. Y. 565) the court (quoting *Rogers* v. *Hosack*, 18 Wend. 336) said: " ' The rule [that the release of one of two joint debtors operates to discharge both] has generally, if not universally, been applied to cases where such co-debtors were released without the consent of the other.' " However, this same case (124 N. Y. 565) says: " The rule deducible from all the authorities is that equity always gives to a release operation according to the intention of the parties and the justice of the case, and although many early cases may be cited to the effect that the rule applied by courts of law was otherwise, and that a saving clause repugnant to the nature of the grant was void and that the grant

remained absolute and unqualified, such is not the modern rule or construction." The defense in the instant case has stressed particularly, as a bar to this action, the Statute of Frauds. The element of relationship that I have already discussed seems to me clearly to do away with the strict provisions of that statute. In *Tiedemann* v. *Tiedemann* (115 Misc. 462; affd., 201 App. Div. 614) I wrote somewhat at length upon this phase of the law and my conclusions were concurred in on appeal and I feel that my views there expressed in the *Tiedemann Case* (*supra*) control my conclusions herein. I cannot but mention the unusual excellence of the brief of the defendants' counsel herein. I have considered all the points that he urged upon my attention, but upon the whole case I have concluded to give judgment for the plaintiff; there was an express trust and there should be an accounting herein. Submit proposed findings and judgment providing for a referee.