WALTER DWY *vs.* THE CONNECTICUT COMPANY ET ALS.

Third Judicial District, Bridgeport, October Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The cardinal rule in the interpretation of contracts is the discovery of the intent and meaning of the parties from the language used; and this rule applies equally to sealed and unsealed writings.

An absolute, unqualified release or discharge of one or more of several joint tort-feasors implies the receipt of full satisfaction for the injury sustained, and for that reason is a release of all of them; and this is equally true whether the instrument of release be under seal or not.

This implication of satisfaction does not arise, however, if the instrument—as in the present case—expressly reserves to the releasor the right to pursue the other wrong-doers; under such circumstances it is clear that the release was not given in return for full satisfaction, and in order to carry out the intent of the parties the writing will be construed, in effect at least, as a covenant not to sue the particular wrong-doer named, leaving the others unaffected by its terms except in so far as they are necessarily benefited by the consideration received by the releasor, the amount or value of which operates as payment to him *pro tanto.*

The presence of a seal upon a release or discharge undoubtedly imports consideration received, and also forbids a modification of the terms

of the instrument by parol; but the nature, extent and legal effect of the release for which the consideration was given, is to be decided from its terms; and if these terms expressly negative a receipt of full satisfaction, there is no reasonable basis for a presumption to the contrary because of the presence of the seal.

The cases of *Ayer* v. *Ashmead*, 31 Conn. 447, and *Allen* v. *Ruland*, 79 Conn. 405, explained and distinguished.

Argued November 4th, 1914—decided January 26th, 1915.

ACTION to recover damages for personal injuries alleged to have been caused by the defendants' negligence, brought to the Superior Court in New Haven County where the plaintiff's demurrer to the defendants' second defense, which set up alleged written releases of the plaintiff's cause of action, was overruled (*Gager, J.*) and said defense held sufficient, and, upon the plaintiff's refusal to plead further, judgment was thereafter rendered (*Burpee, J.*) for the defendants, from which the plaintiff appealed. *Error and cause remanded.*

The plaintiff's injuries were sustained while he was engaged as an employee of the Fred T. Ley and Company, Incorporated, which corporation in turn was at the time engaged in doing work for and upon the premises of the Connecticut Company. He was at the time working under the direction of a foreman of the Ley Company. His injuries were occasioned by an electric current of high voltage with which an iron structure, upon which he was instructed and directed to work, was charged. The complaint alleges that before taking his position upon this iron structure he was informed by the defendants that there was no danger from electricity, and that the defendants undertook to see to it that the current was shut off. It also alleges that the defendants, their servants and agents, were negligent in failing to shut off the current, and in not keeping it shut off while the plaintiff was at work upon this struc-

ture, and also in informing him that the current was shut off. Following the receipt of his injuries, the plaintiff, for a valuable consideration, executed and delivered to the Ley Company the two following instruments under his hand and seal:—

"Know all men by these presents, that I, Walter Dwy of Waterville, county of New Haven, State of Connecticut, for and in consideration of the sum of one hundred dollars to be paid by Fred T. Ley & Company, Inc., receipt whereof is hereby acknowledged, have remised, released and forever discharged, and do hereby for myself, heirs, executors, administrators and assigns, remise, release and forever discharge to the said Fred T. Ley & Company, Inc., its successors and assigns, of and from all debts, demands, action, cause of action, suit, dues, sums and sums of money, account, reckoning, bond specialties, covenant, contracts, controversies, agreements, promises, doings, omissions, variances, damages, expense, executions, and liabilities whatsoever, both in law and equity, or which may result from the existing state of things, which against the said Fred T. Ley & Company, Inc., the said Walter Dwy, now have or ever had from the beginning of the world to the day of the date of these presents, more especially on account of injuries I received on May 6, 1913, by being burned by electricity, I hereby reserving, or hereby reserving, my right to sue any other party or parties."

"I, Walter Dwy, in consideration of one hundred dollars ($100) and other valuable consideration, do hereby release and discharge Fred T. Ley & Company, Inc., from all claims for damages on account of an accident occurring to me on the 6th day of May, 1913, and make no claim against my employer or hereby reserving my right to sue any other party or parties."

*Nathaniel R. Bronson* and *Lawrence L. Lewis,* for the appellant (plaintiff).

*Joseph F. Berry,* for the appellees (defendants).

PRENTICE, C. J. This appeal presents a single question only, to wit: did the execution and delivery by the plaintiff to the Ley Company, his immediate employer, of the two instruments recited in the answer, operate to discharge the defendants from liability for the plaintiff's injury? The plaintiff contends that it did not so operate for two reasons: (1) that the Ley Company did not stand in the position of a joint tort-feasor, and (2) that, even if it did, the legal effect of the instruments, when properly construed, was not to release from liability any other joint tort-feasor.

We will consider the second of these propositions first.

It is an ancient and familiar legal proposition that a release or discharge of one or more of several joint tort-feasors, given for a consideration, is a release of all. While this statement has had general acceptance as expressive of the law, there has, by no means, been a uniformity of view either as to the reasons which underlie and support it, or as to the nature of the release and discharge which comes within its provisions. There are not a few cases which have held that the instrument, to operate as the release of all, must be a technical release, that is, one under seal. *Eastman* v. *Grant,* 34 Vt. 387, 389; *Shaw* v. *Pratt,* 39 Mass. (22 Pick.) 305, 308; *Berry* v. *Gillis,* 17 N. H. 9, 13; *Line* v. *Nelson,* 38 N. J. L. 358, 360; *Bloss* v. *Plymale,* 3 W. Va. 393, 405. More have moved farther away from the ancient notion of the sanctity of a seal, and understand the rule as applicable to sealed and unsealed instruments alike. Some, while not confining the operation of the rule to technical releases, inter-

pret its language literally, thereby bringing every in-
strument using the word "release" or "discharge"
within the rule, whatsoever other language it may
contain. Others interpret its language with regard
for its underlying purpose, and conform its applica-
tion to the intent of the parties as thereby disclosed,
and to ultimate justice. Many, as we have done,
frankly extend its terms so as to include satisfaction,
whatever the evidence of it may be, with release and
discharge as accomplishing the indicated result. *Ayer*
v. *Ashmead,* 31 Conn. 447, 452.

Possibly these differences of attitude, and there are
variations of them, are in part attributable to differing
views entertained as to the underlying reason for the
rule. Possibly, also, a failure to bear these differing
views of the rule's foundation in mind has contributed
to the confusion which exists in the adjudicated cases.
At any rate a confusion does exist that renders har-
monizing far from easy, and forcibly suggests that
an intelligent solution of the problems presented in
any given jurisdiction, in an attempt to make practical
application of the familiar formula of words, can only
be had by keeping steadily in mind the theory of the
law which it represents as there accepted.

Lord Coke said that the rule had its origin in the
fact that the release should be taken most strongly
against the releasor, and the assertion reappears in
several modern cases. *Carey* v. *Bilby,* 63 C. C. A.
361, 363, 129 Fed. Rep. 203, 205; *Bronson* v. *Fitz-
hugh,* 1 Hill (N. Y.) 185, 186. Not infrequently it has
been said that its reason was that the cause of action
for the injury was one and indivisible, so that the re-
lease of one joint tort-feasor necessarily destroyed
the right of action. *Duck* v. *Mayeu,* L. R. (1892) 2 Q. B.
511, 513; *Dufur* v. *Boston & Maine Railroad,* 75 Vt.
165, 172, 53 Atl. 1068; *Matheson* v. *O'Kane,* 211 Mass.

91, 94, 97 N. E. 638. Again, it has been said that the reason is that the law considers that the one who has received the release committed the whole tort and occasioned the whole injury, and that it has satisfied the injured party. *Gilpatrick* v. *Hunter*, 24 Me. 18, 19; *Abb* v. *Northern Pac. Ry. Co.*, 28 Wash. 428, 68 Pac. 954. Still again, reference being had to technical releases, the rule has been made to rest upon a conclusive presumption, said to attach to the presence of the seal, that the sealer had been fully satisfied. *Ellis* v. *Esson*, 50 Wis. 138, 147, 6 N. W. 518; *McBride* v. *Scott*, 132 Mich. 176, 178, 93 N. W. 243; *Carey* v. *Bilby*, 63 C. C. A. 361, 363, 129 Fed. Rep. 203, 205. The reason most commonly assigned, especially in modern cases, and that which is most satisfactory in that it does not rest upon pure technicalities, but upon broad principles of justice and equity, is that the releasor is entitled to one satisfaction, and one only, and that an unqualified release or discharge implies the receipt of such satisfaction. *Lovejoy* v. *Murray*, 70 U. S. (3 Wall.) 1, 17; *McAllester* v. *Sprague*, 34 Me. 296, 298; *Gunther* v. *Lee*, 45 Md. 60, 67; *Matthews* v. *Chicopee Mfg. Co.*, 3 Rob. (N. Y.) 711, 714.

We have adopted this last as the underlying reason for our rule, which, it should be borne in mind, expressly extends its statement to include all cases where satisfaction has been received. The language of this court states our theory of the law most clearly and indicates the rule of interpretation to be given to the language used in expressing the rule of law, and in the application of it to concrete situations. In *Ayer* v. *Ashmead*, 31 Conn. 447, 452, we said: "It is, as we suppose, settled law that a release, discharge or satisfaction of one or more of several joint trespassers is a discharge of them all, in the same manner that the discharge of one of several joint debtors, or a payment and satisfaction of the joint debt by one, is a satisfaction as

to all, since a party injured by a trespass committed by several can have but one satisfaction for his injury, no more than one who has a debt against several can be entitled to be more than once paid."

It needs no argument to demonstrate that under the theory of the law thus stated, and more fully elaborated in the opinion and in the dissenting opinion of JUDGE BUTLER, there is no reason for the proposition that technical releases only come within its purview. What the law, under our theory, regards is not technical or artificially created conditions, but the substantial matter of acceptance of consideration in satisfaction for the injury received; and receipts in full and releases, sealed and unsealed, are only incidents which have their bearing upon the ultimate question. Different degrees of significance may attach to the several kinds of writing as evidence of satisfaction received, but behind them all alike lies the ultimate decisive fact sought after, of the acceptance or nonacceptance of consideration in full satisfaction. *Lovejoy* v. *Murray,* 70 U. S. (3 Wall.) 1, 17. In our conception of the law no peculiar virtue attaches to a formal release, except as an indication of satisfaction received. The rule, in our view of it, does not rest upon technicalities, nor does it set up a purely artificial standard unrelated to just and equitable results to be secured by its enforcement. The accepted formula is but an attempt to express in concise phrase the basic legal principle that satisfaction once had exhausts the right of action, and it should be interpreted and applied according to its spirit and purpose rather than its letter.

Jaggard, in his work on Torts (Vol. 1, § 117), has carried this theory of the law to its logical conclusion. He says that the essential thing is the satisfaction, and states the rule to be: "Wherever the person injured by the wrong of several joint tort feasors has settled

his claim for damages, and received satisfaction, from one of them, the cause of action is discharged as to all." This statement, while differing in form, is not, after all, different in essence from the more familiar one hereinbefore stated. In effect what this writer has done has been to substitute the thing signified for that which signifies it. .

While the cases concur in holding that satisfaction furnishes the ultimate test, there are those, especially of a former time, which recognize, in addition to a satisfaction in fact, a satisfaction in law arising where there is a release under seal. *Brown* v. *Marsh*, 7 Vt. 320, 327; *Bronson* v. *Fitzhugh*, 1 Hill (N. Y.) 185, 186. Here we come upon the ancient notion of the sanctity surrounding a seal, and of certain artificial consequences attending its use which we have largely outgrown. We also discover in it one phase of the theory represented by the doctrine that it is only sealed releases which come within the application of the rule under discussion. This theory of the existence of a satisfaction in law can have no other foundation than one artificially created, or one which rests upon an assumed conclusive presumption that a sealed release, whatever its terms, implies full satisfaction of the wrong or obligation which formed its subject-matter. The former foundation we should be unwilling to recognize; the latter we shall have occasion to notice later.

In the present case the defendants pleaded, as evidence that the plaintiff had been satisfied, two instruments under his hand and seal and delivered by him to the Ley Company, his immediate employer. One was a formal release, in technical terms, of all claims and demands against that company, and especially all claims and demands on account of the injury which forms the subject-matter of the present action, but expressly reserving to the releasor the right to sue any

other party or parties. The other was a less formal instrument of release containing the same reservation. The second adds nothing to the efficacy of the first, and may, for convenience's sake, be disregarded. No question is made of want of consideration, and there is no attempt to modify the terms of the writing by testimony *aliunde* or by showing an unexpressed intent. The plaintiff's sole claim rests upon the writings as written, and is to the effect that, when interpreted as they should be, they are not absolute but qualified or limited releases, and that, therefore, they do not come within our rule making them a bar to an action against the present defendants.

Our question is thus narrowed to one as to the operation of the accepted formula where the release given is not absolute in its terms, but embodies in it a reservation of a right to pursue others than the releasee.

Many cases involving such releases and calling for their adjudication have been before the courts. They naturally group themselves into two classes, according as the instruments were sealed or unsealed, since there are considerations affecting the former which do not concern the latter. Although the instruments here involved are sealed, the attitude assumed by the courts in the matter of interpretation and effect where they were not under seal is not only interesting, but also may have a very direct bearing upon our inquiry.

It has been held that a reservation of the right to enforce the releasor's claim against other joint tortfeasors than the one to whom the writing is given, or other indications therein that the releasor had received only part satisfaction, or that his intent was not to discharge his entire claim but only to render the releasee immune from further claim, was of no effect and was to be ignored, thereby making the writing operate as a general and unqualified discharge. *Ruble* v. *Turner*,

12 Va. (2 Hen. & M.) 38, 44; *Abb* v. *Northern Pac. Ry. Co.,* 28 Wash. 428, 68 Pac. 954; *McBride* v. *Scott,* 132 Mich. 176, 178, 93 N. W. 243; *Flynn* v. *Manson,* 19 Cal. App. 400, 126 Pac. 181. The reason assigned for this construction has been that the primary and controlling matter embodied in the instrument and expressive of the main purpose of the releasor is the release, and that anything destructive of that purpose is so repugnant to the main provision that it must be disregarded. *Price* v. *Barker,* 4 El. & Bl. 760, 776; *Walsh* v. *New York C. & H. R. R. Co.,* 204 N. Y. 58, 63, 97 N. E. 408.

This doctrine, and the assumed foundation for it, has been repudiated in other jurisdictions. *Bloss* v. *Plymale,* 3 W. Va. 393, 407; *Carey* v. *Bilby,* 63 C. C. A. 361, 364, 129 Fed. Rep. 203, 206; *Edens* v. *Fletcher,* 79 Kan. 139, 143 *et seq.,* 98 Pac. 784; *Musolf* v. *Duluth Edison Electric Co.,* 108 Minn. 369, 375, 122 N. W. 499.

These cases, and others to the same effect, have for just cause condemned the reasons upon which those holding differently have rested their conclusions as purely technical and artificial, unmindful of the intent of the parties and not conducive to just and equitable results. They have adopted as the true rule of construction the reasonable one that the entire writing should be examined to discover the intent and meaning of the parties, and have held that when that intent was thus discovered effect should be given to it. They have held that when it appeared that the intent was not to give an absolute release, but only a qualified one, reserving the right to proceed to obtain full satisfaction by a resort to other parties, the effect of an absolute release should not be given to the writing. Applying these principles to situations where the instrument used words of release but accompanied them with an express reservation of the right to pursue others than

the releasee, they have held that there was no presumption of receipt of full satisfaction, but rather the contrary, that the intent not to cut off the right of action against others was apparent, and that a reasonable construction of the instrument required that it be regarded as one whose purpose was to render the releasee immune from further claim, and that, therefore, it be treated as a covenant not to sue, or as having the legal effect of such covenant. *Matheson* v. *O'Kane*, 211 Mass. 91, 95, 97 N. E. 638; *Edens* v. *Fletcher*, 79 Kan. 139, 98 Pac. 784; *Musolf* v. *Duluth Edison Electric Co.*, 108 Minn. 369, 375, 122 N. W. 499; *McAllester* v. *Sprague*, 34 Me. 296, 298; *Carey* v. *Bilby*, 63 C. C. A. 361, 364, 129 Fed. Rep. 203, 206.

The position taken by these courts, and the argument in support of it, are well exemplified in a series of English cases all involving releases substantially like those before us. The instruments they had under consideration were under seal, and dealt with contractual obligations. But the principles of construction they support, and their conclusions, are none the less pertinent for either of those reasons. The seal adds to rather than detracts from the sanctity of the instrument, and at common law (modified by our statute, General Statutes, § 655) the effect of a release of one joint debtor upon the liability of the others is the same as the release of one joint tort-feasor. *Ayer* v. *Ashmead*, 31 Conn. 447, 452.

In *Solly* v. *Forbes*, 2 Brod. & Bing. 38, 48, one of the earliest of these cases, the court said: "But against this, objections of a technical and artificial nature have been raised, and we have been referred to many cases, in which it has been held, that a saving or condition repugnant to the nature of the grant is void, and that the grant remains absolute and unqualified, the condition in no way operating in restraint to the grant. . . .

Taking these cases, however, such as they are, the application sought to be established is altogether fallacious. It is assumed, that, wherever the word 'release' is made use of, it must operate absolutely and unconditionally, though immediately and in the same sentence followed by words, which show it to be partial and particular only, and the general words being in no respect repugnant to the special words, but the latter a qualification merely of the former, leaving the release to operate to every purpose except to the exclusion of the particular purpose, which the parties have declared it to be their intention it shall not exclude. This being apparent, both in terms and meaning, what are the rules of law which apply, narrowing them to the particular point? I pass over the general and leading principles, that the intent of the parties shall prevail as far as by law it may; and further, that courts will be anxious so to construe the law as to give effect to that intent, provided it do not contravene any fundamental rules of the policy of the law. If a deed can, therefore, operate two ways, one consistent with the intent and the other repugnant to it, the courts will be ever astute so to construe it as to give effect to the intent; and the construction, I need not add, must be made on the entire deed."

In *Price* v. *Barker*, 4 El. & Bl. 760, 776, decided many years later, the next step in the argument was well stated as follows: "To entitle the plaintiff to our judgment, it must appear that the deed operated only as a covenant not to sue, and that the rights of the plaintiff as against the surety were preserved by the particular reservation in question, notwithstanding such covenant not to sue. With regard to the first question, two modes of construction are for consideration. One, that, according to the earliest authorities, the primary intention of releasing the debt is to be carried out, and

the subsequent provision for reserving remedies against co-obligors and co-contractors should be rejected as inconsistent with the intention to release and destroy the debt evinced by the general words of the release, and as something which the law will not allow, as being repugnant .to such release and extinguishment of the debt. The other, that, according to the modern authorities, we are to mould and limit the general words of the release by construing it to be a covenant not to sue, and thereby allow the parties to carry out the whole of their intentions by preserving the rights against parties jointly liable. We quite agree with the doctrine laid down by Lord Denman, in *Nicholson* v. *Revill*, 4 A. & E. 675, . . . that, if the deed is taken to operate as a release, the right against a party jointly liable cannot be preserved: and we think that we are bound by modern authorities . . . to carry out the whole intention of the party as far as possible, by holding the present to be a covenant not to sue, and not a release."

In *Cocks* v. *Nash*, 9 Bing. 341, 348, Gazelee, Judge, observed: "I agree with my Lord Chief Justice on both points. No doubt a deed may be construed as a release or a covenant not to sue, according to the intent of the parties, manifested by the content of the deed; but the plaintiff cannot show that intent by parol evidence. In all the cases cited, the court has extracted the meaning of the parties from the deed itself."

In *Thompson* v. *Lack*, 3 M. G. & S. 540, 551, the doctrine of *Solly* v. *Forbes*, 2 Brod. & Bing. 38, was reaffirmed, and the release under seal declared not to operate to discharge the person against whom the reservation was made.

The law is well settled as to the effect of a covenant not to sue, given by the injured person to one of joint tort-feasors. Such a covenant does not operate as a release of the others from liability, and cannot be

pleaded in bar of an action against such others.  *Duck v. Mayeu,* L. R. (1892) 2 Q. B. 511, 513; *Matheson v. O'Kane,* 211 Mass. 91, 94, 97 N. E. 638; *Chicago & Alton Ry. Co. v. Averill,* 224 Ill. 516, 522, 79 N. E. 654; *McAllester v. Sprague,* 34 Me. 296, 298; *Snow v. Chandler,* 10 N. H. 92, 93; *Brown v. Marsh,* 7 Vt. 320, 327.

It remains to consider situations created by instruments of release bearing a seal.  The presence of a seal of course imports consideration received, and is an effective protection to the instrument from attack in that direction.  Its presence also forbids a modification of the terms of the instrument by parol or writing not under seal or evidence of unexpressed intent.  *Brooks v. Stuart,* 9 Ad. & El. 854; *Cocks v. Nash,* 9 Bing. 341, 345; *Allen v. Ruland,* 79 Conn. 405, 411, 65 Atl. 138.

It has also been said that the seal affixed to the release furnishes a conclusive presumption that the releasor has been fully satisfied, and the inevitable conclusion drawn from that proposition is that the releasor, having received full satisfaction, could have no further right of action against anybody.  *Ellis v. Esson,* 50 Wis. 138, 147, 6 N. W. 518; *McBride v. Scott,* 132 Mich. 176, 179, 93 N. W. 243; *Bronson v. Fitzhugh,* 1 Hill (N. Y.) 185, 186; *O'Shea v. New York, C. & St. L. R. Co.,* 44 C. C. A. 601, 603, 105 Fed. Rep. 559, 561.

Properly interpreted, this proposition is doubtless correct, that is to say, the conclusive presumption arises that full consideration has been received for the surrender or discharge which the instrument by its terms makes.  So it is that when the instrument is in the form of an absolute and unqualified release, as most such instruments are, the releasor, when he endeavors to get behind it, is met by the irrebuttable presumption that satisfaction of the wrong or the obligation has been received.  But as addressed to qualified or limited releases whose terms expressly negative the receipt of

full satisfaction, there is no reasonable basis for the presumption of the receipt of full satisfaction for the wrong or obligation, due to the presence of the seal. The former result flows naturally from the fact that, owing to the writing and the seal thereon, full consideration for what the instrument expresses cannot be disputed, and modification *aliunde* is impossible. The same principle, applied to the latter situation, leaves the terms of the instrument to be considered and given effect. To interpret the proposition of these cases, therefore, as holding that the presence of a seal upon a writing containing formal words of release makes it of necessity an absolute one given in return for full satisfaction, no matter what its terms may express or fairly imply to the contrary, is to misinterpret the proposition.

The cardinal rule of interpretation is the discovery of the intent and meaning of the parties from the language used, and that rule applies to sealed as well as to unsealed writings. *Pierce* v. *Sweet*, 33 Pa. St. 151, 158. The sanctity of the seal is not being invaded when the instrument is being examined to discover its true intent and meaning, or being enforced in accordance with the intent thus discovered. It is one thing to hold a sealed instrument immune from attack for want of consideration, and quite another to ignore its terms and manifest intent, and accord to it a purely artificial construction not justified by its language, on account of its having a seal attached thereto. A seal is just as appropriate to a covenant not to sue as to a release.

Our examination of the cases has failed to disclose any in which a disposition was shown to extend the operation of the principle stated outside of its proper sphere. At least we recall no case in which a release, with a reservation similar to those before us, has been construed as an absolute release, or one which came

under the operation of the main proposition with which our discussion opened, by reason of a conclusive presumption of full satisfaction arising from the presence of a seal thereon.   In fact, we have found very few cases involving sealed releases in which it was held, for any cause or reason, that the intent of the parties apparent from the language of the instrument was to be ignored, or, speaking more directly to the present point, that releases of one, with express reservation of the right to proceed against other parties jointly liable, were held to come within the provisions of the rule and to accomplish the release of all.

*Gunther* v. *Lee*, 45 Md. 60, is such a case, but its conclusion was based upon the doctrine, already referred to, that the reservation was repugnant to what preceded it, and therefore to be ignored.   *Delong* v. *Curtis*, 35 Hun (N. Y.) 94, is another such case; but its authority has been destroyed by the later cases of *Gilbert* v. *Finch*, 173 N. Y. 455, 66 N. E. 133, and *Walsh* v. *New York C. & H. R. R. Co.*, 204 N. Y. 58, 97 N. E. 408, both hereinafter more particularly noticed.   *Babcock & Wilcox Co.* v. *Pioneer Iron-Works*, 34 Fed. Rep. 338, 341, is possibly another.   No one of these cases contains a careful consideration of the question involved, and the basis upon which the decision of the last two was placed is not altogether clear, save that the receipt of satisfaction in fact appears to have been assumed.

*Seither* v. *Philadelphia Traction Co.*, 125 Pa. St. 397, 17 Atl. 338, is apparently much relied upon by the defendants, and is oftentimes cited as supporting the proposition for which they contend.   That case was decided upon the simple ground that the sealed instrument embodying the release disclosed upon its face that the releasor had received satisfaction in fact.   The fundamental proposition of the opinion, as the court states it, is that "whenever the plaintiff has actually

received satisfaction for the injury he has sustained, the cause of action is discharged." p. 402.

Turning now to the other side of the question, we find several tort cases, and carefully reasoned ones, presenting substantially the same conditions as here, that is, sealed releases containing express reservations of the right to pursue other parties, wherein it has been held that the terms of the so-called release were examinable to discover the intent of the parties, and to give effect to that intent. Specifically it was held in these cases that the reservation indicated that the release was not given in return for full satisfaction, and that the intent of the parties to be gathered therefrom was to give a qualified one which, while rendering the releasee exempt from further demand, would permit the pursuit of others to obtain the satisfaction not already received, and that effect would be given to this intent by construing the so-called release as a covenant not to sue, or as having the same legal effect as such a covenant.

We have already had occasions to notice the group of English cases which have taken this position, and need not refer to them again. They are all distinctly in point, and emphatic in their conclusions.

Of the cases in this country to the same effect, where tort liability was concerned, the leading one is *Gilbert v. Finch,* 173 N. Y. 455, 66 N. E. 133. In it the court flatly repudiated the doctrine of some of the earlier cases in that State, and adopted that of the English cases. This conclusion was reaffirmed in *Walsh v. New York C. & H. R. R. Co.,* 204 N. Y. 58, 97 N. E. 408, with the following pertinent comment (p. 63): "The early English cases and some of the later cases in our sister States literally follow the logic of this rule to the conclusion that any kind of a settlement, release or satisfaction, even though expressly limited to certain

Dwy v. Connecticut Co.

parties and reserving all rights as against the others, operates to discharge all who participate in the wrong. The idea underlying this rule is that the primary intention to release is the thing to be carried out, and all inconsistent reservations must be ignored as repugnant to the purpose of a release, which was to destroy the debt or obligation. It is one of those harsh although strictly logical common-law rules which has had to make way for the modern tendency to substitute justice for technicality wherever that is possible, for now the English courts are holding that the general words of a release, which are limited by specific reservations, are to be construed as a covenant not to sue the party to whom the instrument is given, thus effectuating the intention of the parties without affecting the joint liability."

The following cases in other jurisdictions have taken the same position: *Kropidlowski* v. *Pfister & Vogel Leather Co.*, 149 Wis. 421, 425, 135 N. W. 839; *Derosa* v. *Hamilton*, 14 Pa. Co. Ct. 307. *Cleveland, C., C. & St. L. Ry. Co.* v. *Hilligoss*, 171 Ind. 417, 423, 86 N. E. 485, also appears to assent to this doctrine.

As related to the analogous common-law liability of joint debtors, the ninth edition of Parsons on Contracts (Vol. 1, p. 28), makes this comprehensive statement, well supported by the American authorities, touching both sealed and unsealed releases: "But though the word 'release' be used, even under seal, yet if the parties, the instrument being considered as a whole and in connection with all the circumstances of the case and the relations of the parties, cannot reasonably be supposed to have intended a release, it will be construed as only an agreement not to charge the person or party to whom the release is given, and will not be permitted to have the effect of a technical release." In support of this doctrine see *Whittemore* v. *Judd*

*Linseed & S. O. Co.,* 124 N. Y. 565, 574, 27 N. E. 244; *Benton* v. *Mullen,* 61 N. H. 125, 128; *First Nat. Bank* v. *Marshall,* 73 Me. 79, 82; *Bradford* v. *Prescott,* 85 Me. 482, 487, 27 Atl. 461; *Merritt* v. *Bucknam,* 90 Me. 146, 152, 37 Atl. 885; *Dickinson* v. *Metacomet Nat. Bank,* 130 Mass. 132, 135; *Hale* v. *Spaulding,* 145 Mass. 482, 14 N. E. 534; *Parmelee* v. *Lawrence,* 44 Ill. 405, 413; *Clark* v. *Mallory,* 185 Ill. 227, 233, 56 N. E. 1099.

Chitty, in the sixteenth edition of his work on Contracts, p. 812, gives substantially the same statement of the law as supported by the English cases.

The reasoning of the cases, both English and American, which have refused to give to a release which, upon its face, negatives an intent to discharge the injured party's claim, and furnishes unmistakable evidence of the nonreceipt of satisfaction, the effect of precluding further recovery by him against anybody is so convincing, and their conclusion so thoroughly consonant with justice and equity, as to compel our concurrence in them. We could not well do otherwise and retain our conception of the purpose sought to be accomplished by the rule, and of the ultimate test to be applied in effectuating that purpose, to wit, the satisfaction of the injured party. Plainly the rule was not formulated out of a tender regard for joint tort-feasors, and to furnish a shield for them against demands for satisfaction for their wrongs. In so far as it is a rule to be observed, its aim must be the accomplishment of just and equitable results to all concerned through a single satisfaction to be given and received for wrong suffered.

The defendants urge that *Ayer* v. *Ashmead,* 31 Conn. 447, and *Allen* v. *Ruland,* 79 Conn. 405, 65 Atl. 138, are decisive in their favor of the question here. On the contrary, the principles enunciated in these cases are,

as far as they go, in perfect harmony with our present conclusions. The chief significance of *Ayer* v. *Ashmead*, lies in its clear recognition, already referred to, of satisfaction as furnishing the ultimate test. Beyond this feature of the opinion there is little, either in its reasoning or conclusion, of present pertinence. Ayer had brought separate actions against two joint trespassers, Grumley and Ashmead. While these suits were pending, he settled with Grumley, giving him a receipt "in full for damages and costs" in the case, and withdrew it. Ashmead, in the action against him, thereupon pleaded (1) that the plaintiff had received the amount paid in full satisfaction and discharge of the trespass and of all damages and costs therefor, and (2) that the plaintiff had executed a release discharging Grumley and the defendant from all damages on account of the trespass. Upon the trial Ashmead showed the situation as recited. It was admitted that the settlement with Grumley did not include and was not intended to include the suit on trial, and that it was understood by the parties to the settlement that the latter action would proceed as if no settlement had been made.

Possibly a controversy as to Ayer's right to pursue Ashmead for the recovery of substantial damages might have arisen out of this situation. But no such controversy arose. It appears to have been assumed by the parties, the trial court, and this court, that the receipt of full satisfaction for the "damages and costs" in the case against Grumley, as evidenced by the receipt in full, implied that Ayer had been fully satisfied for the injury suffered. Full recovery therefor could have been had in the action against Grumley, and the receipt given professed to be in full for the damages recoverable in that case.

The only question presented for determination, or

under discussion, was as to the plaintiff's right to recover nominal damages as a means of obtaining costs in the pending action. The defendant contended that he was entitled to a verdict in his favor, and by its operation to a judgment for costs; the plaintiff that he should have a verdict for nominal damages carrying with it the right to costs. The contention was in reality one over costs.

It was in this connection that the understanding as to the effect of the settlement with Grumley was deemed to be of importance. As far as appears, it was not deemed to have importance as negativing the receipt of full satisfaction for the plaintiff's injury. The fighting ground was the effect, as touching the matter of costs, of the settlement made while the suit against Ashmead was pending, that settlement being intended not to reach that suit. The majority opinion held that, as the plaintiff's right of action against the two joint trespassers had, as everybody assumed, been fully satisfied in the Grumley settlement, there was no foundation left for a recovery of nominal damages; the minority that, notwithstanding the basis for a new action or for the recovery of substantial damages was gone, a verdict for nominal damages was, under the circumstances, the proper one. The latter opinion, written by JUDGE BUTLER, is particularly enlightening as to the nature of the controversy before the court, the position assumed by the parties, and the narrow character of the issue under consideration and decided. The proposition, favorable to the plaintiff, for which he contended, was that "the court in such cases, where two actions are pending and one is discharged, may and should render a judgment in the other for nominal damages, distinct from and independent of the damages or debt sued for, *as the basis of a judgment for costs.*" *Ayer* v. *Ashmead,* 31 Conn. 447, 456.

In *Allen* v. *Ruland,* 79 Conn. 405, 65 Atl. 138, one of joint tort-feasors had received from the injured party a sealed release absolute in its terms. The defendant undertook to import into that instrument, by parol evidence of intent, a reservation similar to that embodied in the release before us. We held that the proffered evidence was not admissible for that purpose. The question here was not presented or discussed even in a remote way. There is, however, this significant feature of the case: it is difficult to understand why the question of the admissibility of this evidence for the purpose of converting the absolute release into a qualified one reserving to the releasor the right to pursue others of the joint tort-feasors was discussed and passed upon, if such change in its terms, if made, would have accomplished nothing in legal effect.

It has been suggested, as an objection to the conclusion we have reached, that the result of it is to permit the injured party to obtain more than full satisfaction. *McBride* v. *Scott,* 132 Mich. 176, 182, 93 N. W. 243; *Chapin* v. *Chicago & E. I. R. Co.,* 18 Ill. App. 47, 50. Under our theory of the law and the rule, as we interpret it, this result is impossible of attainment. Full satisfaction is in itself a bar to further recovery. *Ayer* v. *Ashmead,* 31 Conn. 447, 452. When the right of action is once satisfied it ceases to exist. If part satisfaction has already been obtained, further recovery can only be had of a sufficient sum to accomplish satisfaction. Anything received on account of the injury inures to the benefit of all, and operates as payment *pro tanto.* This is the familiar rule where consideration has been received in return for covenants not to sue or in part payment, and it is the logical and reasonable one. *Snow* v. *Chandler,* 10 N. H. 92, 95; *Chamberlin* v. *Murphy,* 41 Vt. 110, 119; *Bloss* v. *Plymale,* 3 W. Va. 393, 409; *Ellis* v. *Esson,* 50 Wis. 138, 154, 6 N. W.

518; *Musolf* v. *Duluth Edison Electric Co.*, 108 Minn. 369, 378, 122 N. W. 499.

In view of these conclusions, we have no occasion to discuss the plaintiff's remaining proposition, predicated upon the contention that the Ley Company did not stand in the position of a tort-feasor with the defendants.

Turning now to the instruments before us, we find them to be in all essential respects similar to those under consideration in the cases cited in support of the proposition adopted by us. It is impossible to read either of them in its entirety without discovering unmistakable indications that it was not given by the plaintiff in return for satisfaction received for his injury, or as an absolute release. In neither of them is to be found recognition of satisfaction received, or anything to indicate any other end to be served by it than to render the releasee immune from further . demand against it. To give to either the effect of an acknowledgment of a receipt of satisfaction, and to compel the releasor to accept its consideration in satisfaction, would be to give to it an artificial value it does not deserve, and to disregard its apparent character. If the intent of the parties to the release is to be effectuated and justice accomplished, these instruments must be given the legal effect, consonant with the intent of the parties, of covenants not to sue the Ley Company, and not of releases within the meaning and intent of the rule under discussion.

Notwithstanding these instruments, the plaintiff remains free to prosecute his action against these defendants for the recovery of such sum as, together with that already received by him from the Ley Company, will afford him full satisfaction, and no more, for his injuries.

There is error, the judgment is set aside and the cause remanded for further proceedings according to law.

Dwy *v.* Connecticut Co.

In this opinion THAYER, RORABACK and BEACH, Js., concurred.

WHEELER, J. I concur in the result, but not in the reasoning of the opinion. It has long been a principle of our law that the release, for a consideration, of one of several joint tort-feasors is a release of all. This rule works injustice. Courts struggle to take a given case out of its grasp as the majority opinion vividly portrays.

In this case our court construes an instrument which in terms, so plain that all may read, is a straight release of Ley and Company, to be a covenant not to sue Ley and Company because at the end of the release is a reservation of the right of the releasor to sue any other party. The parties to the instrument intended to release Ley and Company, but not to release the other joint tort-feasors.

In order to avoid the consequences, under our rule, of the release of Ley and Company for $100 for a serious injury, the court construes the instrument to be what manifestly the parties never intended it to be, viz., a covenant not to sue Ley and Company. The court thus avoids the application of this harsh rule where the instrument contains a reservation of the right to sue other joint tort-feasors. But in all other cases where there is a release without the reservation, the rule applies, and action against other joint tort-feasors is barred, even though satisfaction has not been had for the injury.

As far as the position of the court goes, it indicates its inclination to restrict this rule of law, as far as it thinks that it may, in order to do justice. I have a similar desire to do justice in this case, but I am unable to reach this desirable end by construing the language, "I hereby release and discharge Ley and Com-

VOL. LXXXIX—7

pany from all claim for damage," to be a covenant not to sue Ley and Company and not a release of Ley and Company.

The opinion of the court reveals how surely experience has shown the judicial mind that this rule works injustice. It operates thus: a person for a nominal sum releases one of several joint tort-feasors for a serious injury; the law says he may not recover of the others the balance of the damage suffered. Obviously he should receive satisfaction for his damage, and, if he has received partial satisfaction from one, he should receive from the others enough to give him complete satisfaction. This rule of law was established by the courts because it then seemed to bring about what should be done according to the then established judgment of society. This judgment of society or custom was incorporated in a precedent which thus became the law.

The result reached was not the assertion of the court's will, but of a result found by the established methods of the law. This rule of law was the result of growth. In such manner the common law has grown; and its flexibility and capacity for adaptation was pointed to as its peculiar boast and excellence by Justice Matthews in *Hurtado* v. *California,* 110 U. S. 516, 530, 4 Sup. Ct. Rep. 111.

So modifications of the rule may be had where the court ascertains that the rule does not represent what should be according to the settled judgment of society. And in like manner one rule may be abrogated and another set in its place. Before change should be made the utmost care should be exercised to ascertain whether by the orderly methods of the law such change is demanded.

Where property rights of large consequence have become vested in reliance upon the rule, the court will not ordinarily change it.

Dwy *v.* Connecticut Co.

Time has proved that the rule we are considering is wrong in principle and in operation promotes injustice. It is not too much to say that the numerous opinions of the judges demonstrate this, and that the settled judgment of society and of the profession of the law concur in the belief that this rule does not represent what ought to be where property rights have not become vested in reliance upon the rule. Under such circumstances it is better that the rule should be changed rather than modified by exceptions which are sustained by a forced construction of men's agreements.

That court best serves the law which recognizes that the rules of law which grew up in a remote generation may, in the fullness of experience, be found to serve another generation badly, and which discards the old rule when it finds that another rule of law represents what should be according to the established and settled judgment of society, and no considerable property rights have become vested in reliance upon the old rule. It is thus great writers upon the common law have discovered the source and method of its growth, and in its growth found its health and life. It is not and it should not be stationary. Change of this character should not be left to the legislature.

General Statutes, § 655, provides that the discharge of several joint debtors shall not discharge the other joint debtor. The common law by this statute was changed as to contract obligations. Since our court is unable to change the rule as to tort obligations this statute should be broadened so as to include all obligations, whether arising in tort or in contract.

I concur in holding that the court erred in overruling plaintiff's demurrer to defendants' substituted second defense.