[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO SET ASIDE VERDICT
In this case, the jury returned a verdict in favor of the plaintiff and the defendant, Alfano, has filed a motion to set aside the verdict. The defendant, Alfano, was operating a car owned by the defendant, Zampano. The same lawyer represented both defendants and on July 10, 2000, he sent an offer of judgment to the plaintiff offering a stipulation to judgment against Zampano in the amount of $50,000.00. On July 13, 2000, the plaintiff accepted the offer of judgment. The acceptance was an agreement to "stipulate to judgment as to the defendant, Suzanne Zampano ONLY" in accordance with the offer of judgment. The motion to set aside the verdict makes two claims: (1) the plaintiff's acceptance of judgment against the vicariously liable Zampano operates as a discharge of the defendant Alfano; (2) if the court does not accept that position the court still must reduce the verdict not only by appropriate collateral sources, but also by the $50,000.00 paid to the plaintiff by Zampano. This is so, argues the defendant, because the plaintiff is not entitled to recover more than the jury intended by virtue of a pretrial settlement with a vicariously liable principal.
 I
Does the acceptance of the defendant's Zampano's offer of judgment discharge the defendant, Alfano? The defendant, Alfano, has referred to an article in 92 A.L.R.2d 533 entitled "Release of (or covenant not to sue) master or principal an affecting liability of servant or agent for tort, or vice versa." The general rule is stated to be that "[m]ost of the cases decided in the absence of a specific statute support the view that a valid release of one of the parties to the master-servant or principle-agent relationship releases the other. This broad view is expressly stated in some cases; others take a modified view that a release has that effect unless it contains an express reservation of rights against the party who is not a party to the instrument; most of the cases, however, support the broad view by its application." 92 A.L.R.2d 533, 535 (emphasis added). CT Page 14713
Having read that article, however, the court wholeheartedly agrees with a rather strong statement for this staid publication:
 "The cases within the scope of this annotation . . . reveal an amazing divergence of opinion and a conflict in principle as well as result."
The general common law rule in our state is said to be that a release of one tortfeasor operates as a release of all tortfeasors. Sims v. HondaMotor Co., 225 Conn. 401, 406 (1993). The common law rule can be viewed as applying to two distinct categories of cases — those where two or more actual joint tortfeasors are involved and each tortfeasor is alleged to have proximately caused injury and, as here, a vicarious liability situation where the principal is only liable under respondeat superior for the sole actions of its agent.
In Sims, which was a joint tortfeasor release situation, our court said this common law rule has been "widely criticized by courts and commentators as unjust because it served as a trap for unknowing plaintiffs . . ." 225 Conn. at pp. 407-407; Justice Wheeler who favored abandoning the old rule in his dissent in Dwy v. Connecticut Co.,89 Conn. 74, 97 (1915) flatly said: "This rule works injustice." The same injustice is worked for the same reasons in situations where there is vicarious liability and it is argued that a release of the principal results in a release of the agent or vice versa. This court believes that our state, if it does not abandon the common law rule entirely, will adopt the "modified view" in vicarious liability situations. Under such a "modified view it would be held that where a release or equivalent instrument contains a reservation of rights against the party who is not a party to the instrument a plaintiff can proceed against that party. Several states do accept the so-called modified view set forth in the ALR article in vicarious liability cases. Alijian v. Ben Schloss, Inc.,73 A.2d 290, 293 (NJ, 1950); Magidson v. Bloom, 11 N.Y.S.2d 324, 326
(1939); Hunt v. Ziegler, 271 S.W. 936 (Tex. 1925).
The court concludes that when the cases are clearly examined that seems to be the rule in our state as between joint tortfeasors and the court cannot think of a reason why the "modified rule" should not be applied in a vicarious liability situation. Let us look at a case involving joint tortfeasors. In Dwy, which appears to be a joint tortfeasor release case, the plaintiff was an employee of the Ley Company. His employer was engaged to do work at the property of the defendant, Connecticut Company. He was seriously injured by the allegedly negligent acts of "the defendants their servant or agents." The plaintiff signed a document that remissed, relied and discharged the Ley Company but it also contained CT Page 14714 language to the effect that the plaintiff reserved his "right to sue any other party or parties." The Dwy court reviewed cases that hold all tortfeasors would be released even where a release of one tortfeasor reserves the right to sue other tortfeasors. The court cited cases critical of this view saying: "(such) cases, and others to the same effect, have for just cause condemned the reasons upon which those holding differently have rested their conclusions as purely technical and artificial, unmindful of the intent of the parties and not conducive to just and equitable results." 89 Conn. at p. 83. Examining the instrument before it with its reservation of rights language, the court held the plaintiff was not barred from suing the other joint tortfeasors. The court said at page 96: "If the intent of the parties to the release is to be effectuated and justice accomplished, these instruments must be given the legal effect, consonant with the intent of the parties, of covenants not to sue the Ley Company and not of releases within the meaning and intent of the rule under discussion." Dwy thus treated the document before it as "a covenant not to sue" a device whereby a plaintiff can get a payment from one tortfeasor but does not thereby give up his or her right to or against other tortfeasors.[1] Ballentine's Law Dictionary, 3d Ed., defines a covenant not to sue as follows:
 "covenant not to sue. A device most familiar in the law of torts, being used to prevent the release of a tortfeasor upon settling with his joint tortfeasor. 1 Am J2d Accord § 9.
 A covenant not to sue recognizes that the obligation or liability continues but the injured party agrees not to assert any rights grounded thereon against a particular coventee. Atlantic Coast Line R. Co. v. Boone, (Fla) 85 So.2d 834, 57 ALR 2d 1189. Indicia of such a covenant are: No intention on the part of the injured person to give a discharge of the cause of action, or any part thereof, but merely to treat in respect of not suing thereon, and this seems to be prime differentiating attribute; full compensation for his injuries not received, but only partial satisfaction; and a reservation of the right to sue the other wrongdoer. Smith v. Dixie Park Co., 128 Tenn. 112, 120 S.W. 900."
In other words, a covenant not to sue is a document with that title that specifically reserves a right to sue the non-settling party. Dwy
said if you have something entitled a release or at least not entitled a covenant not to sue but with a reservation of rights against other parties it will be considered a covenant not to sue why not, given the CT Page 14715 definition? In other words, Connecticut appears to accept the modified view of the common law, at least in the case of true joint tortfeasors, that where a release is given one joint tortfeasor with a reservation of right to sue others the right to sue non-settling tortfeasors will not be lost.[2] Justice Wheeler's dissent is illuminating — he thought the common law rule should be jettisoned in its entirety and said at page 97:
 "Courts struggle to take a given case out of (the common law rule's) grasp as the majority opinion vividly portrays. In this case, our court construes an instrument which, in terms so plain that all may read, is a straight release of Ley and company to be a covenant not to sue Ley and company because at the end of the release is a reservation of the right of the releasor to sue any other party."
Nothing in case law interferes with this interpretation of Dwy and what it really held or the position that its result would apply to a vicarious liability situation such as that presented in Alvarez. In Alvarez, the release is quoted in footnote 4 at 249 Conn. pp. 711-12. The document reads that for a certain sum, Alvarez "does (do) hereby for my (our) heirs, executors, administrators, successors and assigns and any and all other persons, firm, employers, corporations, associations or partnerships release, acquit and forever discharge Grazyna Ziolo, Jan Ziolo and Progressive Insurance Company of and from all claims . . . resulting from an automobile accident . . ." The document is entitled a "Full Release of All Claims and Demands" and contains no language indicating it was meant to apply only to the Ziolos and Progressive Insurance. Therefore, the court felt compelled to analyze § 52-572 of the General Statutes to see if that statute would save the plaintiff's claim despite the release. But here we do not have an Alvarez type release.
In this case, there was an offer of judgment to settle the case against the principal Zampano. But the offer was not accepted as such. The acceptance was characterized by the parties as an agreement to "stipulate to judgment as to the defendant Suzanne Zampano ONLY in accordance with the offer of judgment.
In other words, what the court said in Blakeslee Arpaia Chapman, Inc.v. El Constructors, Inc., et al, 239 Conn. 708, 746 (1997) is quite true.
 "There are many instances in which it would be imprudent for a plaintiff to file individual offers of CT Page 14716 judgment to multiple defendants because partial settlement may inadvertently extinguish rights against non-settling defendants by operation of law. Annot., 92 ALR 2d 533 (1963). A plaintiff, as a practical matter, would not file separate offers of judgment in cases involving vicarious liability based on respondeat superior, automobile owner/operator negligence, or statutory indemnification claims unless each of those offers of judgment were for the full value of the case.
But the understanding or agreement between the parties cannot be determined under a Dwy analysis by looking at the offer of judgment alone. What also must be examine are the terms on which it was accepted. In other words, the stipulation of judgment contemplated here under P.B. § 17-15 was not a blanket acceptance but an acceptance with the understanding that it would "only" apply to the principal. Under the Practice Book section, the parties should be able to stipulate to judgment in the manner they agree to, which would include the right to limit the ambit or legal consequences of acceptance of the offer of judgment. Thus, when the offer of judgment and the limited manner in which it was accepted are examined together, the "release" thereby given was "only" to apply to the principal, Zampano. The court believes our court will accept the so-called "modified view referred to in the Restatement whereby some courts take the view that a release of the principal does not release the agent where the language of the release contains a reservation of rights against the party who is not a party to the instrument. As noted in Dwy, our court appears to have applied this modified rule in cases involving joint tortfeasors and no good reason exists not to apply it in the vicarious liability situation.
Secondly, the motion cannot be granted for a fancier reason that really rests on the same analytical base. What we have here is a situation requiring an application of the law of judgments. By not raising objection to the language of acceptance, the defendant, Zampano, in effect agreed to the modification of the offer of judgment initially made. P.B. § 17-15 says upon filing of the acceptance of the offer "the judicial authority shall render judgment forthwith." (Emphasis added.) That being the case, the court has no power to modify a consent judgment or interpret it beyond what the parties have agreed to. SeeOswieiko v. American Hardware, 137 Conn. 185, 187 (1950). cf. Mazziottiv. Allstate Insurance Co., 240 Conn. 799, 806-807 (1997).
Section 50(i) Restatement (Second) Judgments even goes beyond that by saying that, except where the parties have agreed otherwise, "a satisfaction or release of judgment, or covenant not to execute upon it CT Page 14717 or other agreement terminating in whole or in part the judgment debtor's obligation, does not discharge the liability of any other persons liable for the loss," p. 40 of Vol. 2. That may have been the whole point ofAlvarez. The insurer for the settling party wanted a "full release" and not "a satisfaction for payment of the award" as offered by plaintiff's counsel and that was the reason why the plaintiff had to try to get under the umbrella of § 52-572 in light of the release signed by the client.
In any event, for all the foregoing reasons the court will not set aside the judgment against the defendant.
 II
The defendant further argues that even if the court does not set aside the judgment based upon the settlement with Zampano, the court should reduce the verdict by the appropriate collateral sources and also by the $50,000.00 received from Zampano. Otherwise, argues the defendant, Alfano, the plaintiff would recover more than the jury intended. The defendant refers to Dwy v. The Connecticut Company, supra at89 Conn. p. 95
where the court says: "Anything received on account of the injury inures to the benefit of all and operates as a payment pro tanto. "However, the plaintiff points to the fact that under § 52-225b
collateral sources do not include amounts received by a claimant as a settlement." Therefore, under § 52-225a the verdict cannot be reduced. All of this requires an examination of the common law basis of the collateral source rule which the statute sought to reverse.
At common law benefits received by the plaintiff from a source wholly independent and collateral to the tortfeasor did not diminish the amount of damages otherwise recoverable. There were exceptions to the rule andDwy stated one which was expanded and fully defined in 22 Am.Jur.2d at § 559, p. 634. There it says where the joint tortfeasor makes the contribution the damages against the other tortfeasor are reduced by the amount of that contribution. The joint tortfeasor is in a sense independently liable for the full amount of damages even if, for example, his or her wrongdoing was only responsible for 1% of the proximate cause in causing the injury. As the Am.Jur. article put it: "This result is mandated by the rule that a plaintiff is entitled to only one recovery for a single injury and a joint tortfeasor is not a collateral source that can be ignored under the collateral source rule." Id.
Against this background, Tort Reform I was passed and too broadly it said collateral sources were "any payments made to the claimant or on his (sic) behalf (1) by any person as compensation for personal injury or CT Page 14718 wrongful death attributable to the incident giving rise to the cause of action . . ." Without the companion rules on comparative negligence at least as regards joint tortfeasors, the Tort Reform I language in many instances would have no appreciable effect and as to joint tortfeasors it was mere surplusage to a result already achieved under the common law by cases such as Dwy and as set forth in the just quoted remarks in Am.Jur. But with comparative negligence rules unfair results could arise from the application of the broad language defining "collateral sources" as set forth in Tort Reform I. The Law Revision Commission in pressing for a change in the language of Tort Reform I reported to the legislature what could result — "a double deduction from the total damages of the amount due from a settling defendant. It gave the following hypothetical:
. . . . "consider an accident caused by the negligence of two joint tortfeasors resulting in $100,000 in personal injuries. Assume that each tortfeasor is 50% at fault and that one of the tortfeasors settles for $50,000. The victim sues the remaining tortfeasor for his remaining $50,000 in injuries. Under the Act the jury awards the victim $50,000 against the remaining tortfeasor. The Act's collateral source rule, however, requires the court to reduce the amount of any collateral source payments, including payments received in settlement. The $50,000 settlement, resulting in a net award to the victim of $0 . . . The language of the act should be clarified to ensure that such a result does not occur."
Tort Reform II tried to correct this deleterious results by saying as noted "collateral sources do not include amounts received by a claimant as a settlement." What does all of this and particularly the last quoted language have to do with the issue now before the court — whether in a vicarious liability situation monies paid to the plaintiff by settlement should reduce the amount of damages the agent should pay to the plaintiff after a judgment against the agent. The court would suggest it has nothing to do with resolving the issue. As noted, at common law "a defendant is not entitled to be relieved from paying any part of the compensation due for injuries proximately resulting from his (or her) act where payment for such injuries or damages comes from a collateral source wholly independent of him (or her), Mack v. LaValley, 55 Conn. App. 150,167 (1999); Regan v. NY, NE R.R. Co., 60 Conn. 124, 130 (1991).
It cannot be said that in a vicarious liability situation a principal, for example, is independent of the agent or indeed even collateral to the agent — the principal is only responsible to the plaintiff because CT Page 14719 of respondeat superior. The benefit the plaintiff receives from a principal in a case like this is derived from the principal's obligation to pay for damages caused by the agent. That is in the principal — agent case we have the quintessential case of one party not being independent of the other. In such a situation, the common law courts would reduce the recovery of the plaintiff because in that situation the specter of double recovery presented itself. And such a reduction did not depend on whether or not such a result would pass muster under a collateral source analysis. The collateral source rule and whether or not it should apply is not the only test at common law to determine whether a plaintiff's verdict should be reduced because of benefits received from parties other than the particular defendant against whom the verdict was rendered. What is more to the point perhaps is the fact that the plaintiff's putative right" to keep the full amount of the jury's verdict plus the settlement money from the principle depends solely on the order of litigation or the happenstance that the principle decided to settle out. Haynes v. Yale New Haven Hospital, 243 Conn. 17, 29 (1997). If there had been no settlement with the principal and the trial against principal and agent proceeded in its ordinary course, there would be of course a judgment against principle and agent in the same amount if the plaintiff had prevailed.
What the common law courts were also concerned with the need to avoid "double liability." In Damages and Torts, Minzer, Vol. 2 at § 17.00, p. 17-12, speaking of the collateral source rule it is said that:
 "Consistent with the notion of justice underlying the rule, courts have zealously protected tortfeasors against double liability by rigorous adherence to the principle that the benefits to be protected must be attributable to sources totally independent of the tortfeasor."
In a vicarious liability situation, a non-negligent principal has a right of indemnification against a negligent agent. Alvarez v. New HavenRegister, 249 Conn. 709, 721 (1999), Stulginski v. Foran, 43 Conn. 244,250 (1875). In this case, the plaintiff has a verdict against the defendant agent for $350,000.00, should the principal be permitted to bring an indemnification action against the agent for the figure at which she settled? The court does not think so and concludes that the statement that "collateral sources do not include amounts received by a claimant as a settlement" § 52-225b must be interpreted in the common law matrix against which is set. The only reason for the statutory language was to make clear that "settlements" are not included in the term "collateral sources" in § 52-225a. But to avoid unfairness the term should not be applied to settlements in a vicarious liability situation because such CT Page 14720 sums were not treated as "collateral sources" at common law and are in effect anterior to and independent of any definitions of that term in § 52-225a or § 52-225b and the consequences sought to be achieved by the legislature.
The court will not set aside the verdict in the amount of $350,000.00 but does order it reduced by $50,000.00.
Corradino, J.