Wanamaker, J.
The full opinions of the court of common pleas and the court of appeals are not before this court. Briefs and arguments of counsel, however, disclose substantially three controversies between the parties, in this court:
1. As appears from plaintiff in error’s brief: “No negligence has been shown against The Adams Express Company.”
Whether or not negligence has been shown under the evidence is a question not for the judge, but for the jury. The record discloses that there was some evidence tending to show negligence, and the question whether or not it was sufficient should have been submitted to the jury.
2. “That no act of The Adams Express Company can be said to have been the proximate or contributing cause of this injury.”
*350 Whether or not The Adams Express Company was guilty of negligence, as pleaded, was not the only question for the jury to determine upon this record, but also whether or not such negligence was a proximate cause, not necessarily the proximate cause, of her injury. These were both questions of fact for submission to the jury.
3. The main contention between the parties hereto is one of law arising upon two paper writings, known as Exhibits A and B, Exhibit A being between Ida Beckwith and The Hocking Valley Railway Company, and Exhibit B between Ida Beckwith and The New York Central Railroad Company. These agreements are substantially the same in style and the chief substance of both is contained in the following paragraphs:
“Whereas, the party of the first part claims that liability for said injuries attaches against tlie said The Lake Shore & Michigan Southern Railway Company, The Hocking Valley Railroad Company and The Adams Express Company.
“Now, Therefore, in consideration of the payment of the sum of Seven Thousand Five Hundred Dollars ($7500.00), by the said party of the second part, the receipt whereof is hereby acknowledged, the party of the first part covenants and agrees that she will not sue the party of the second part, nor prosecute any pending action to which The Hocking Valley Railroad Company is a party on account of the injuries sustained by the party of the first part, as above set forth, said party of the first part expressly reserving her rights of action against The New York Central Railroad Company and The Adams Express Company, and this agree *351 ment shall be effective only so far as it permits the party of the first part to retain her causes'of action against the said The New York Central Railroad Company and The Adams Express Company.”
The Adams Express Company now claims that these exhibits releasing the railroad companies of all claims for the injuries in question to said Ida Beckwith inure to the benefit of the express company, upon the theory and doctrine that the three defendant companies were joint feasors at most; that the exhibits show a release as to the railroad companies, and that, therefore, under the doctrine announced and long in effect in Ellis v. Bitzer, 2 Ohio, 89, The Adams Express Company was likewise released and discharged from all liability to said Ida Beckwith.
It must be conceded that the Ellis v. Bitzer case has been the law of Ohio since 1825. It must also be conceded that that case has been approved or cited with favor by many courts of last resort, including Michigan, North Carolina, Tennessee, Washington, Colorado, Iowa and numerous other courts.
What is the doctrine announced in that case? The syllabus speaks for itself:
“Where, in an action of trespass against five, plaintiff accepts a note from two, for a sum of money to be paid at a future day, in satisfaction as to them, but not to operate as a satisfaction for the other defendants, the cause of action is discharged as to all.”
The particular trespass in that case was one of assault and battery. The suit was against five defendants. It appeared that two of them, Wil *352 Hams and Adkins, had executed a promissory note for a definite sum of money and delivered the same to the injured party “in satisfaction as to them, but not to operate as a satisfaction for the other defendants.” Upon the trial it was held that the satisfaction as to Williams and Adkins, by which they were discharged from further liability, inured to the benefit of all the other defendants, and the supreme court of Ohio held that the action was discharged as to each and all of such other defendants.
It must be admitted that if this be the true legal doctrine, defining the rights and relations of alleged joint tort-feasors, it is very persuasive in the case at bar.
A decided case is worth as much as it weighs in reason and righteousness, and no more. It is not enough to say “thus saith the court.” It must prove its right to control in any given situation by the degree in which it supports the rights of a party violated and serves the cause of justice as to all parties concerned.
In this case, and others following it, the court seems to have got the cart before the horse. It has unduly emphasized the importance of a release — either a release from liability to be sued, a release from a further prosecution of an action already begun, or a release from further satisfaction as to damages for an injury. A release presupposes an obligation, and an obligation as between private parties is either contractual or tortious. In such an obligation the first question naturally is, what is the remedy in order to obtain satisfaction for .such obligation? Such remedy, *353 however, presupposes that somebody’s right has been violated. A right given and guaranteed by the constitution is. certainly comprehended -within such rights.
The Bill of Rights of Ohio, Section 16, declares and defines the rights as to one’s person in providing that there shall be remedy by due course of law for any injury done such person. That injury being pleaded, and proven at least to an extent sufficient to submit the question to the jury, the paramount consideration of court and jury in such a situation is to see to it that that right, when proven violated, is at all stages of the case 'safeguarded, in order that there be an adequate remedy given the injured party for such violation. All other considerations touching release, satisfaction, discharge of some of the parties, are subsidiary and must in no wise be applied so as to defeat the main object of such a suit at law, to-wit, remedy for the injury.
Again, we speak of remedial provisions of constitution and remedial provisions of statutes being liberally construed so as to effect their substantial and salutary purpose. It is equally important that court procedure shall be so applied as to make the remedy adequately effective, and no technical rules of law should be applied so as to defeat in whole,- or in part, such remedy.
It is an old rule of law that any party charged with a liability, however informally, or threatened with a suit at law, may buy his peace, may settle his own controversy, without waiting for a suit at law or the trial of a suit already begun, and that *354 any such settlement made in good faith would be fully protected and- operate as a release to the parties affected, according to its terms.
Now, where it is charged that two or more persons have committed a wrong against another, the question arises, may one of these persons buy his peace, settle all claims for damages made against him, solely for his own benefit and his own release, leaving or reserving all questions as to the liability of others for independent and later determination? Why not? What principle of law, of reason or righteousness, what primary element of justice, is violated by such a proceeding, save the dictum of some court? It is admitted that in a joint act committing a wrong upon some other party, the act of each in the furtherance of the wrong is the act of all, and that each is in principle, and therefore in law, the agent of all in the furtherance of such wrongful purpose. While, however, the part that each played in the doing of the wrong makes him responsible for the whole wrong, it nevertheless is likewise clear that there can be but one satisfaction, one redress, for that wrong. The injured party may not receive full satisfaction from more than one of the wrongdoers, and when he has received such full satisfaction it should be an end of the whole matter and all other wrongdoers should be discharged, not because they didn’t do wrong, or the wrong has been condoned, but upon the principle that full satisfaction has once been made to the injured party. But in the Bitzer case, supra, there was only partial “satisfaction” as to “them.” It was particularly specified that such *355 satisfaction was not to operate as a satisfaction for the -other defendants.
Upon what principle the court took a contract between the parties, which" was in plain, definite and unambiguous terms, and wrote into that contract not only what it did hot contain, but what the contract expressly said it should not contain, is beyond understanding. It emphasizes the importance of a release without a complete satisfaction and extinguishes a right without such satisfaction.
There is, neither reason; rhyme, nor righteousness in such a course of reasoning, if it may be called reasoning at all. There is- nothing peculiar or exceptional about contracts of release, or contracts not to sue, or contracts to cease prosecuting a suit. They are presumably tp be construed, if in doubt, by the same rules of arriving at the intention.. of the parties as^ any other kinds of contract.
But courts unfortunately have too often not only disregarded the inténtion of the parties in such kinds of contracts, but have made new contracts for the parties squarely contrary to what the parties themselves intended. The Bitzer case is, therefore, disapproved.
Much has been said in the course of this case in undertaking to distinguish between a cpvenant not to. sue, a covenant to cease^ suing, and a covenant for partial satisfaction. In principle I am unable to distinguish them. It is too much a case of tweedle dee and tweedle dum. Such engagements are all made with reference to and solely in connection with a conceded or contended liability for *356 wrongs committed by two or more persons known in common law as joint tort-feasors., Whether there was any wrong or not, whether such wrong was the proximate cause of an injury, which one, if any, or all, of the defendants is liable as charged, should be determined exactly as if no contract of settlement, or satisfaction, or covenant not to sue, had become a part of the pleading or proof of the case. If it turns out that there is any such agreement as in the case at bar, by which partial satisfaction may have been made by other persons charged with the commission of the wrong or injury, then such partial satisfaction will inure to the benefit of all parties responsible in law for the commission of the wrong. The obligation is joint and several. It is an obligation to pay the damage done, and the whole damage done, but to pay it but once, and when that damage is once fully paid that is the end of the whole matter. But there is no reason why, unless the parties all agree, a partial satisfaction should be declared a full satisfaction. It is not so done as to contractual obligations; it should not be so done as to tortious obligations.
In the case at bar it is perfectly clear and uncontested that writings offered as exhibits, touching the release of the railroad companies for any further liability to Ida Beckwith in connection with the-matters pleaded, were solely and exclusively for the benefit of the railroad companies respectively; that they were not only not intended to be for the benefit of The Adams Express Company, but it was expressly stipulated therein that *357 all rights as against the express company were to be reserved. The parties themselves reserved the right to sue The Adams Express Company. It is an odd species of' legal legerdemain whereby a court can destroy that reservation, that plain provision in the agreement of the parties.
■ If, -however, the language of the release is unqualified and absolute in its terms,' it may be fairly said that a presumption does arise that the injury has been fully satisfied, because the parties would not be presumed to split "'the redress into fractional parts. But such a presumption cannot arise where the very terms of the'release are squarely to the contrary. ■ -
Presumptions must not be indulged to defeat the manifest intention of the-parties to the contract. The purpose is to promote such intention where the language of the parties is. not clear.
While the preponderance of cases in various state jurisdictions has been in line with the Ellis v. Bitzer case, it is of interest to note that at least twp - other courts 'of last resort. have announced and followed the more humane and reasonable doctrine.
In the case of Dwy v. The Connecticut Co. et al., 89 Conn., 74, decided, in, 1915, the syllabus is as follows:
“The cardinal rule in the interpretation of contracts is the discovery of the intent and meaning of the parties from the language used;' and this rule applies equally to sealed and. unsealed writings.
“Ah absolute, unqualified release or discharge of one or more of several joint tort-feasors implies *358 the receipt of full satisfaction for the injury sustained, and for that reason is a release of all of them; and this is equally true whether the instrument of release be under seal or not.
“This implication of satisfaction does not arise, however, if the instrument — as in the present case — expressly reserves to the releasor the right to pursue the other wrong-doers; under such circumstances it is clear that the release was not given in return for full satisfaction, and in order to carry out the intent of the parties the writing will be construed, in effect at least, as a covenant not to sue the particular wrong-doer named, leaving the others unaffected by its terms except in so far as they are necessarily benefited by the consideration received by the releasor, the amount or value of which operates as payment to him pro tanto.
“The presence of a seal upon a release or discharge undoubtedly imports consideration received, and also forbids a modification of the terms of the instrument by parol; but the nature, extent and legal effect of the release for which the consideration was given, is to be decided from its terms; and if these terms expressly negative a receipt of full satisfaction, there is no reasonable basis for a presumption to the contrary because of the presence of the seal.”
The doctrine here announced is so sensible and salutary that it is hard to understand how any court intent upon justice could follow any other rule.
An Illinois case is not quite so recent. It is to be found in 143 Ill., 358, City of Chicago v. Bab *359 cock. The seventh proposition of the syllabus reads:
“Where a person who is injured by the negligence of two or moré persons receives a sum of money in consideration of his agreement not to sue the party paying, — not in satisfaction of the damages, but only in part payment of the same, — the transaction will not amount to an accord and satisfaction, and will be no bar to a suit against the other parties; and the sum paid will go in reduction of the damages, recoverable against them.”
It is regrettable that there are other parts of the sylla-bus and opinion that seem to contradict this rule, but I am disposed to give the Illinois court the most favorable view of the case.
Now, what right has the express company to sue? It is uniformly held, without exception, that the injured party has. a right to' sue whom he pleases among the joint tort-feasors. He need not sue all. Those that are not a party to the record cannot be made a party to the judgment, But he is not thereby prejudiced as-against those whom he does sue. Even after suit is brought he may dismiss at his option as to certain defendants, and such dismissal clearly does not operate to the advantage of the other defendants. Likewise, it ha's long been the rule that he may obtain satisfaction from any one of the judgment debtors, they being jointly and severally liable, and that there is no right to contribution among such judgment debtors in such a case. ,’
Some day the court will réverse this policy and place them all on an equality, so far as may be *360 necessary among wrongdoers, in order to give full satisfaction to the party wronged and work no special iniquity to the wrongdoers.
But, again, how can a party injured complain that someone else has paid part of the damage? He is not prejudiced thereby, but upon the contrary the amount of the judgment against him is subject to be reduced by the exact amount paid by his co-tort-feasor, whether a party to the record or not.
His line of reasoning is not unlike that of the Immortal J. N., who used to insist upon special rates and privileges at the hotels. It was said that upon numerous occasions he induced the landlord by his persuasive art to reduce the bill one-half, whereupon he would reply, “I shall not be outdone by your generosity and I shall, therefore, throw off the other half.”
Because a substantial sum has been paid in this case to apply on the damages of Ida Beckwith, the other party insists not only on getting the benefit of that payment but on very generously remitting the balance of the damage. It is impossible to justify such a contention upon any sound and just principles of law.

Judgment affirmed.

Nichols, C. J., Jones, Matthias, Johnson and R.obinson, JJ., concur.
Merrell, J., not participating.